Opinion by Judge WATFORD; Concurrence by Judge BERZON.
OPINION
WATFORD, Circuit Judge:
Officers investigating an interstate drug-trafficking ring learned through wiretap intercepts that a shipment of methamphetamine would be traveling by car from Washington to Minnesota. They stopped the car en route in Montana; the car belonged to appellant Hector Magallon-Lopez, who was driving. Officers seized the car and, after obtaining a search warrant, discovered approximately two pounds of methamphetamine hidden in an area beneath the trunk. That discovery formed the basis for Magallon-Lopez’s drug-trafficking convictions following a jury trial. On appeal, he challenges only the district court’s denial of his motion to suppress the drugs found in his car.
I
The relevant facts are not in dispute. Officers working with a Drug Enforcement Administration task force obtained authorization to wiretap a suspected drug trafficker’s telephone. From the wiretap intercepts, the officers learned that: (1) on September 27, 2012, a man named Juan Sanchez would be transporting methamphetamine from the Yakima Valley in Washington to Minneapolis, Minnesota; (2) Sanchez would be accompanied by another Hispanic male who had a tattoo on his arm of a ghost, skull, or something else related to death and went by the nickname “Chaparro” (meaning' short);; and (3) the two men would be traveling in a green, black, or white passenger car with Washington plates. Based on cell site location information obtained from Sanchez’s cell phone, the officers estimated that the car would be traveling through Bozeman, Montana, sometime between 3:00 a.m. and 4:00 a.m. on September 28.
The officers set up a surveillance operation near Bozeman on. Interstate 90, the main east-west highway through Montana. Around 3:00 a.m. on September 28, they spotted a green Volkswagen Passat with Washington plates traveling eastbound. An officer dispatched to follow the car confirmed that two men were inside and that both appeared to be Hispanic and short in stature. The officer relayed the car’s license plate number to another officer, who determined that the car was registered to a man named Hector Lopez at an address in Toppenish,; Washington, a town in the Yakima Valley associated with the investigation.
After obtaining this information, the officers decided to conduct ah investigatory stop. The officer following the car pulled it over as if making a routine traffic stop. Although the officer had not observed any traffic violations, he told Magallon-Lopez that the reason for the stop was Magallon-Lopez’s failure to signal properly before changing lanes. The officer knew this was not-the real reason for the stop, but he did *674 not want to disclose at that point the true nature of the investigation.
Officers questioned both occupants of the car. They asked for identification and confirmed that the passenger was a man named Juan Sanchez. They also confirmed that the driver was Magallon-Lo-pez, the registered owner of the car. After asking Magallon-Lopez to pull up his sleeves, the officers observed a tattoo of a ghost or grim reaper on his right forearm. Both Magallon-Lopez and. Sanchez said they were traveling from the Yakima Valley to Minnesota to work in a restaurant.
While Magallon-Lopez and Sanchez were detained on the side of the highway, the officers' summoned a drug-detection dog from a nearby Sheriffs office. The dog positively alerted to the presence of drugs in the car. At that point the officers seized the car and took it to the sheriffs office for safekeeping while they obtained a'search warrant. The validity of the warrant is not at issue, other than the lawfulness of the stop and subsequent seizure of the car that led to its issuance.
II'
The first question is whether the officers lawfully stopped the car. The Fourth Amendment permits investigatory stops if the facts known to the officers established “reasonable suspicion to believe that criminal activity may be afoot.” United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (internal quotation marks omitted). Magallon-Lopez does not seriously contest the existence of reasonable suspicion, nor could he.
Based on the wiretap intercepts, the officers knew (or at least had probable cause to believe) that Juan Sanchez would be leaving the Yakima Valley on September 27 and. traveling by car to Minneapolis with a shipment of methamphetamine. The officers’ information about this trip— including the identifying details of the car and Sanchez’s traveling companion — came not from an anonymous tip but straight from the conspirators themselves. Officers overheard members of the conspiracy discussing details of- the planned trip in real time, during conversations that the conspirators did not know were being intercepted by law enforcement. That information, like information received from a victim or citizen witness, is presumptively reliable absent circumstances suggesting that the conspirators might be lying. See Ewing v. City of Stockton, 588 F.3d 1218, 1224-25 (9th Cir.2009); 2 Wayne R. LaFave, Search and Seizure § 3.4(a), at 274-75 (5th ed.2012). Here, there were no such circumstances. The officers therefore had probable cause to believe that methamphetamine would be found in the car transporting Juan Sanchez through Bozeman on the date and during the time frame in question. To justify stopping a particular vehicle, however, the officers needed reasonable suspicion to believe they had identified the right car.
The details that the officers confirmed before making the stop sufficed to establish reasonable suspicion, Green, black, or white passenger car with Washington plates? Check. Traveling eastbound through Bozeman, Montana, on the correct date and during the predicted, quite narrow time frame? Check. Occupied by two Hispanic males? Check. Registered to an owner who lived in a town associated with the investigation and who, at least in terms of stature, fit the description of the person expected to be accompanying Sanchez? Double check. Verification of these details, taken together, established reasonable suspicion to believe that the green Passat was the car transporting Juan Sanchez as discussed in the wiretap intercepts.
*675 Unable to contest the existence of reasonable suspicion, Magallon-Lopez challenges. the legality of the stop on a different theory. He contends that the stop violated the Fourth Amendment because the officer who pulled him over deliberately lied when stating the reason for the stop, and the . reason the officer gave was not itself supported by reasonable suspicion.
That the officer lied about seeing Magallon-Lopez make an illegal lane change does not call into question the legality of the stop. The standard for determining whether probable cause or reasonable suspicion exists is an objective one; it does not turn either on the subjective thought processes of the officer or on whether the officer is truthful about the reason for the stop. If, for example, the facts provide probable cause or reasonable suspicion to justify a traffic -stop, the stop is lawful even if the officer made the stop only because he wished to investigate a more serious offense. Whren v. United States, 517 U.S. 806, 812-13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Likewise, if the facts support-probable' cause to arrest for one offense, the arrest is lawful even if the officer invoked, as the basis for the arrest, a different offense as to which probable cause was lacking. Devenpeck v. Alford, 543 U.S. 146, 153-55, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004); United States v. Ramirez, 473 F.3d 1026; 1030-31 & n. 2 (9th Cir.2007). The Court in Devenpeck emphasized that the objective facts-are what matter in situations like these:
While it is assuredly good police practice to inform a pérson of the reason for his arrest at the time he is taken into custo- . dy, we have never held that to be consti- - tutionally requiréd. Hence, the predictable consequence of a rule limiting the . probable-cause inquiry to offenses closely related to (and supported by the same facts, as) those identified by the arresting officer is not ... that, officers will cease making sham arrests on the hope . that such arrests will later be validated, but rather that.officers.will cease providing reasons for arrest. And even if .this option were to be foreclosed by adoption of a statutory or constitutional requirement, (Officers would simply give every reason for which probable cause could conceivably exist.
543 U.S. at 155, 125 S.Ct. 588 (footnote omitted).
The same principle — that the objective facts are controlling in this context, not what the officer said or was thinking— applies here. So long as the facts known to’ the officer establish reasonable suspicion to justify an investigatory stop, the stop is lawful even if the officer falsely cites as the basis for the stop a ground that is not supported by reasonable suspicion. 'We emphasize,' however, that although our focus is on the objectively reasonable basis for the stop, not the officers’ subjective intentions or beliefs; the facts justifying the stop must be known to officers at the time of the stop.. See Moreno v. Baca, 431 F.3d 633, 639-40. (9th Cir.2005).
The only remaining question is whether, in light of the information obtained during the stop, the officers had probable cause to seize Magallon-Lopez’s car. We think they did. As discussed above, given the reliability of the information gleaned from the wiretap intercepts, the officers had probable cause to believe that Juan Sanchez would be transporting methamphetamine by car on the date and during the time frame in question. That, in turn, gave the officers probable cause to believe that methamphetamine would be found inside the car in which Sanchez was riding, assuming they - could identify the correct car.
*676 As we have said, even before the officers stopped Magallon-Lopez’s car, the facts known to the officers provided reasonable suspicion to believe they had identified the correct car. The investigatory stop eliminated virtually any doubt on that score, as the stop confirmed that a man named Juan Sanchez was indeed a passenger in the car. Sure, he could have been a different Juan Sanchez, not the one mentioned in the wiretap intercepts, but the likelihood of that was minuscule given all the other details that matched, including the tattoo on Magallon-Lopez’s arm and the fact that both he and Sanchez admitted they were traveling to Minnesota. In light of these and the other details the officers were able to corroborate, there was “a fair probability” that the officers had stopped the right car and that drugs would be found inside. Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 627 (1983). That gave them probable cause to seize the car.
Because the officers had probable cause to seize the car even without the drug-detection dog’s positive alert, we need not address Magallon-Lopez’s argument that the dog’s lapsed certification rendered his alert insufficiently reliable under Florida v. Harris, — U.S. -, 133 S.Ct. 1050, 185 L.Ed.2d 61 (2013).
[[Image here]]
The district court correctly denied Ma-gallon-Lopez’s motion to suppress. The judgment is AFFIRMED.