**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JAVIER VANEGAS,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>CITY OF PASADENA; CITY OF PASADENA POLICE DEPARTMENT; KLOTZ, Individually; in his/her capacity as Police Officer for Pasadena Police Department; ARELLANES, Individually; in his/her capacity as Police Officer for Pasadena Police Department; STARK, Individually; in his/her capacity as Police Officer for Pasadena Police Department; RIEHL, Individually; in his/her capacity as Police Officer for Pasadena Police Department; MURREN, Individually; in his/her capacity as Police Officer for Pasadena Police Department; LEMOS, Individually; in his/her capacity as Police Officer for Pasadena Police Department; SALAZAR, Individually; in his/her capacity as Police Officer for Pasadena Police Department; BUNDY, Individually; in his/her capacity as Police Officer for | No. 21-55478<br><br>D.C. No.<br>2:20-cv-07845-SVW-AGR<br><br><br>OPINION |

Pasadena Police Department; DOES,
1–10, individually, and in their
capacity as Police officers for
Pasadena Police Department,
                    *Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted March 2, 2022
Pasadena, California

Filed August 31, 2022

Before:  Daniel A. Bress and Patrick J. Bumatay, Circuit
Judges, and Roger T. Benitez,* District Judge.

Opinion by Judge Bumatay;
Concurrence by Judge Bumatay;
Concurrence by Judge Bress;
Concurrence by Judge Benitez

---

* The Honorable Roger T. Benitez, United States District Judge for
the Southern District of California, sitting by designation.

**SUMMARY**[**]

**Civil Rights**

The panel affirmed the district court's summary judgment in favor of the City of Pasadena and Pasadena police officers in an action brought pursuant to 42 U.S.C. § 1983 alleging that plaintiff was unlawfully arrested.

At issue was whether police officers had probable cause to arrest plaintiff either for reports that he followed and harassed an attorney outside a courthouse or for plaintiff's refusal to identify himself during an investigatory stop. Defendants asserted that they had probable cause to arrest plaintiff on two grounds: (1) disturbing the peace under California Penal Code § 415(2); and (2) obstructing an officer under California Penal Code § 148(a)(1).

Plaintiff first argued that, because he was arrested under California Penal Code § 148(a)(1), that means it was disputed whether probable cause existed under § 415(2). The panel disagreed, stating first that it was well-established that if the facts support probable cause for one offense, an arrest may be lawful even if the officer invoked, as the basis for the arrest, a different offense which lacked probable cause. Second, by the time of plaintiff's arrest, the officers learned enough facts to believe that plaintiff had violated § 415(2) and therefore had probable cause to make the arrest. Having found no violation of the Fourth Amendment, there was no need to proceed to the second question of the

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

qualified immunity analysis—whether the unlawfulness of the officers' conduct was not "clearly established."

Plaintiff next asserted that the officers lacked probable cause to arrest him under California Penal Code § 148(a)(1) because the failure to identify oneself by itself does not violate the law.     The panel held that no "controlling authority" or "robust consensus of cases" prohibited Officer Klotz from arresting plaintiff under the facts confronting him.  Neither this court nor the Supreme Court has said that arresting a person for failing to provide an identification violates the Constitution.  Thus, even if plaintiff's failure to identify himself did not provide probable cause to arrest under § 148(a)(1)—a question that the panel did not need to decide—Officer Klotz had breathing room to make the purported mistake of law and he and the other officers were entitled to qualified immunity for plaintiff's arrest.  The panel further affirmed the dismissal of plaintiff's claim against the City on a failure-to-train theory because plaintiff failed to establish a pattern of similar constitutional violations by untrained employees.

Concurring, Judge Bumatay stated that although the panel properly affirmed the dismissal of plaintiff's false-arrest claim on qualified immunity, he was left wondering whether California Penal Code § 148(a)(1) authorizes officers to arrest a person based on the refusal to produce identification during a police investigation. Judge Bumatay found no California court case that categorically holds that the failure to identify oneself to an officer during a police investigation—without more—furnishes probable cause to arrest under § 148(a)(1).  So even though the officers must receive qualified immunity here, plaintiff might be right that officers lacked probable cause to arrest him for violating § 148(a)(1).  In rebuttal to Judge Bress's concurrence, Judge

Bumatay stated that his concern is that federal courts may have gotten ahead of California courts in interpreting the law; it promotes the law to clarify whether the officers made a mistake by arresting plaintiff; this question was squarely presented in this appeal; and if California law was so clear it should have been an easy task to come up with California caselaw supporting Judge Bress's view.

Concurring, Judge Bress was compelled to write separately in this straightforward case only to address Judge Bumatay's separate concurring opinion, which expounds on California criminal law and suggests that various federal court decisions interpreting California law may be wrongly decided. Judge Bress wrote to make clear that, in his respectful view, Judge Bumatay's evaluation of California law was both unnecessary to the resolution of this case and substantively incorrect, advocating a narrow interpretation of California Penal Code § 148(a)(1) that California courts have not embraced. Here, plaintiff threatened an attorney following a court proceeding. That alone provided probable cause for his arrest under California Penal Code § 415(2), as the majority opinion correctly held. And so that was sufficient to dispose of Vanegas's § 1983 claim asserting a Fourth Amendment violation for allegedly wrongful arrest.

Concurring, Judge Benitez agreed with the court that summary judgment was properly granted for the City of Pasadena and its police officers. He wrote separately to explain that this was an easy case. Although, undoubtedly, an arrest for refusing to give one's name without at least reasonable suspicion would be an unreasonable seizure under the Fourth Amendment, that was not this case. Here, a crime had been reported. Plaintiff's name was reasonably related to the circumstances justifying the stop and central to the investigation of a crime, whether the crime was stalking

(Cal. Pen. Code § 646.9) or maliciously disturbing another by loud noise (Cal. Pen. Code § 415).  At that point, the detective had probable cause to arrest for either offense and he had probable cause to arrest for violating Cal. Pen. Code § 148(a)(1) when plaintiff refused to disclose his name.

## COUNSEL

Krista R. Hemming (argued), The Hemming Firm, San Pedro, California, for Plaintiff-Appellant.

Arnold F. Lee (argued), Assistant City Attorney; Michele Beal Bagneris, City Attorney; Office of the City Attorney, Pasadena, California; for Defendants-Appellees.

## OPINION

BUMATAY, Circuit Judge:

At issue in this civil rights lawsuit is whether police officers had probable cause to arrest Javier Vanegas either for reports that he followed and harassed an attorney outside a courthouse or for his refusal to identify himself during an investigatory stop.  The district court found that officers had probable cause for both crimes.  We hold that Vanegas's 42 U.S.C. § 1983 claim fails, and we affirm.

## I.

### Background

This lawsuit stems from events immediately following Vanegas's 2019 divorce proceedings at the Superior Courthouse in Pasadena, California.  Vanegas appeared at the family court hearing, along with his ex-wife, Sandra Kerguelen, and her attorney, Karen Suri.  According to Suri, Vanegas raised his voice and yelled at Suri and the judge during the hearing.  As a result, the judge admonished Vanegas to control himself or face sanctions.  After the hearing, Suri asked a court bailiff to help her and Kerguelen leave without Vanegas following them.  The bailiff stood in front of Vanegas, blocking the way so that Suri and Kerguelen could exit.

After Suri and Kerguelen left the courthouse, Vanegas followed them.  Vanegas started yelling aggressively at Suri.  Suri and Kerguelen tried to walk away, but Vanegas continued to follow while calling Suri a "scumbag" and "liar."  Vanegas eventually came within arm's reach of Suri.  Feeling threatened, Suri told Vanegas that she would call the police.  But he still didn't leave.  Suri then dialed 911.  Suri

told the operator that there was a man following her, yelling at her on the street, and that she was afraid and needed help.

At that point, Suri saw a Pasadena Police Department Community Service Officer and flagged him down.  Suri told the officer that Vanegas was following her and that she did not feel safe.  The officer asked Suri to walk to the police station across the street to file a report.  Suri and Kerguelen did so.

Pasadena Police Officer Philip Klotz was at the courthouse on other business.  While there, he heard an alert over the police radio about a 911 caller being followed outside the courthouse.  So Officer Klotz exited the Courthouse and headed toward the southeast corner of Garfield Avenue and Walnut Street.  As he walked to the intersection, Officer Klotz received an update, advising that the suspect, named "Javier Vanegas," was walking northbound on Garfield Avenue.  After Officer Klotz reached the intersection, he observed only one man, later identified as Vanegas, heading north on Garfield Avenue.

Officer Klotz asked Vanegas whether his name was "Javier."  Vanegas responded by asking Officer Klotz who he was.  Officer Klotz identified himself as a law enforcement officer and asked Vanegas for his identification.  Despite at least three requests for identification, Vanegas did not comply and instead took out his cell phone to record the interaction.  Officer Klotz then gave Vanegas the option of either producing his identification or being placed in handcuffs.  Vanegas still refused to identify himself.

After several other officers arrived, Officer Klotz placed Vanegas in handcuffs for officer safety.  Afterward, Officer Klotz received a radio call that Vanegas violated California

Penal Code § 415—a disturbing-the-peace ordinance. Officer Klotz asked other officers to have Suri identify Vanegas. Officer Klotz received confirmation over the radio that Suri positively identified Vanegas as the person who was following her.

While other officers remained with Vanegas, Officer Klotz walked across the street to speak with Suri. Officer Klotz saw Suri almost crying and visibly shaking. Suri relayed that Vanegas began following her and Kerguelen after the family court hearing. After interviewing Suri, Officer Klotz walked back to Vanegas and advised him that he was under arrest. The officers then took Vanegas to the Pasadena police station for booking. Vanegas was eventually released with a citation for violating California Penal Code § 148(a)(1), which punishes obstructing a peace officer. The Office of the City Attorney for Pasadena declined to pursue charges and Vanegas was never convicted of any offense stemming from his arrest.

A few months later, Vanegas sued the police officers involved and the City of Pasadena alleging, among other claims, violation of his Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983. The officers and the City moved for summary judgment. In granting summary judgment, the district court ruled that probable cause existed to arrest Vanegas under California Penal Code §§ 148(a)(1) and 415(2) and so there was no Fourth Amendment violation. The court also held that Vanegas did not establish *Monell* liability against the City. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

Vanegas appeals the dismissal of his § 1983 claim. We review the grant of summary judgment de novo. *Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 759 (9th Cir. 2017). We first address Vanegas's claim against the

officers and then turn to his claim against the City.  As to both claims, we affirm.

## II.

### § 1983 Claim Against the Officers

To prevail under § 1983, Vanegas must show that (1) Pasadena police officers "violated a federal statutory or constitutional right" and (2) "the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (simplified). So the inquiry is two-fold.  Did the officers violate Vanegas's constitutional rights?  And if so, were those rights clearly established at the time?

On the first question, Vanegas's challenge implicates the Fourth Amendment since he claims he was unlawfully "seized."   In the context of a § 1983 action, a Fourth Amendment violation occurs when a person is arrested "without probable cause or other justification." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012) (en banc) (simplified).  Probable cause to arrest exists when there is a "fair probability or substantial chance of criminal activity" by the arrestee based on the totality of the circumstances known to the officers at the time of arrest. *Id.* (simplified). This "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

On the second question, even with a constitutional violation, officers may still receive qualified immunity if the unlawfulness of their conduct was not "clearly established" at the time of arrest.  By "clearly established," we mean that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Acosta v. City of Costa Mesa*, 718 F.3d

800, 824 (9th Cir. 2013) (per curiam) (simplified). In other words, "existing law must have placed the constitutionality of the officer's conduct beyond debate." *Wesby*, 138 S. Ct. at 589 (simplified). And we only look to "controlling authority" or "a robust consensus of cases of persuasive authority" to determine settled law. *Id.* at 589–90 (simplified).

While Vanegas asserts he was unlawfully arrested, the officers maintain that they had probable cause to arrest him on two grounds: (1) disturbing the peace under California Penal Code § 415(2); and (2) obstructing an officer under California Penal Code § 148(a)(1). And even if no probable cause existed under state law, they contend they are still entitled to qualified immunity given there was no violation of clearly established law. We look at each basis for arrest in turn.

## A.

### California Penal Code § 415(2)

California Penal Code § 415(2) punishes "[a]ny person who maliciously and willfully disturbs another person by loud and unreasonable noise." "Maliciously" means a wish to "vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." Cal. Penal Code § 7(4). "Willfully" means "a purpose or willingness to commit the act." *Id.* § 7(1). To comply with the First Amendment, California courts have construed § 415(2) to prohibit loud noises in only two circumstances: (1) "where there is a clear and present danger of imminent violence," or (2) "where the purported communication is used as a guise to disrupt lawful endeavors." *In re Brown*, 510 P.2d 1017, 1023 (Cal. 1973). So the ordinance only

criminalizes loud noise "designed to disrupt rather than communicate." *Id.* at 1022.

Under California law, "making loud noises, shouting obscenities, and making threats" constitute a violation of § 415(2). *In re Curtis S.*, 155 Cal. Rptr. 3d 703, 763–64 (Cal. Ct. App. 2013). In that case, a defendant shouted and used obscene language at the victim, told her to "get back, you better get back," called her a "bitch," and swung his fist at her. *Id.* at 760. The defendant's speech caused the victim to back away in fear. *Id.* The court upheld the charge under § 415(2) because the defendant's speech "presented a clear and present danger of imminent violence and was designed to disrupt a lawful endeavor." *Id.* at 763.

Vanegas argues that, because he was arrested under California Penal Code § 148(a)(1), that means it's disputed whether probable cause existed under § 415(2). We disagree.

First, it does not matter that Officer Klotz stated that the basis of Vanegas's arrest was under § 148(a)(1). It is well-established that "[i]f the facts support probable cause . . . for one offense," an arrest may be lawful "even if the officer invoked, as the basis for the arrest, a different offense" which lacks probable cause. *United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016); *see also Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 954 (9th Cir. 2010) ("[P]robable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect for any criminal offense, regardless of their stated reason for the arrest.").

Second, by the time of Vanegas's arrest, the officers learned of enough facts to believe that Vanegas had violated § 415(2). Suri called 911 and reported that a man was

following her, yelling at her on the street, and that she was afraid and needed help. She then told a Pasadena Community Service Officer that she feared Vanegas because he was following her and shouting at her. Suri also positively identified Vanegas to officers as the person who followed her. Finally, when Officer Klotz walked over to Suri, he saw she was visibly shaking. Based on the collective knowledge of the officers, there was a fair probability that Vanegas's noises constituted "a clear and present danger of imminent violence" and a "disrupt[ion of] lawful endeavors." *In re Brown*, 510 P.2d at 1023.

There is one wrinkle. Violation of § 415(2) is a misdemeanor. *See* Cal. Penal Code § 17(b). Under California law, an officer may only make a warrantless arrest for a misdemeanor if he has probable cause to believe that the person committed the offense *in the officer's presence*. Cal. Penal Code § 836(a)(1). So if Vanegas's arrest was based on § 415(2), then the officers may have violated California law because his conduct was not in Officer Klotz's presence. But that does not change the result. That's because "[t]he requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment." *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990). So to establish a violation of the Fourth Amendment, it does not matter if Officer Klotz was present when Vanegas committed the misdemeanor. Rather, the "crucial inquiry" is whether Officer Klotz had probable cause to make the arrest. *Id.* at 773. Here, we hold that he did.

Having found no violation of the Fourth Amendment, we need not proceed to the second question of whether the officers violated a "clearly established" right for Vanegas's

offense under § 415(2). So on this basis alone, Officer Klotz lawfully arrested Vanegas.

## B.

### California Penal Code § 148(a)(1)

California Penal Code § 148(a)(1) punishes "[e]very person who willfully resists, delays, or obstructs any public officer [or] peace officer, . . . in the discharge or attempt to discharge any duty of his or her office or employment." The officers contend that Vanegas's actions fall within its prohibition since his refusal to identify himself obstructed Officer Klotz's investigation of a potential stalking case. In response, Vanegas argues that California law does not require a person to identify himself to police officers. He contends that the officers lacked probable cause to arrest him under California Penal Code § 148(a)(1) because the failure to identify oneself by itself does not violate the law.

But to succeed on his § 1983 claim, Vanegas must overcome qualified immunity by showing that the officers violated a clearly established right at the time of his arrest. *Wesby*, 138 S. Ct. at 589. "A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (per curiam) (simplified). This is a forgiving standard: it "protects all but the plainly incompetent." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (simplified).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Lopez ex rel. Lopez v. Gelhaus*, 871 F.3d 998, 1005 (9th Cir. 2017) (simplified). So, it's not enough that the legal answer be "suggested by then-existing

precedent"; the answer must be "so well defined" that "the legal principle clearly prohibit[s] the officer's conduct in the particular circumstances before him." *Wesby*, 138 S. Ct. at 590. In other words, qualified immunity still attaches when officers "reasonably but mistakenly concluded that probable cause [wa]s present." *Wesby*, 138 S. Ct. at 591 (simplified); *see also Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442–43 (9th Cir. 1991) ("Even absent probable cause, qualified immunity is available if a reasonable police officer could have believed that his or her conduct was lawful, in light of clearly established law and the information the searching officers possessed.").

No "controlling authority" or "robust consensus of cases" prohibited Officer Klotz from arresting Vanegas under the facts confronting him. *Wesby*, 138 S. Ct. at 589 (simplified). Neither this court nor the Supreme Court has said that arresting a person for failing to provide an identification violates the Constitution. In fact, we have both said the opposite. *See Hiibel v. Sixth Jud. Dist. of Humboldt Cnty.*, 542 U.S. 177, 187–88 (2004) (upholding a state law permitting arrest for failure to identify oneself—where the request for identification is reasonably related to circumstances justifying the stop—as "consistent with Fourth Amendment prohibitions against unreasonable searches and seizures"); *United States v. Landeros*, 913 F.3d 862, 869 (9th Cir. 2019) ("In some circumstances, a suspect may be required to respond to an officer's request to identify herself, and may be arrested if she does not.").

And no California case clearly establishes that Officer Klotz should have known he lacked probable cause to arrest Vanegas for failing to identify himself in the course of the stalking investigation. Indeed, multiple district courts, including the one here, thought Officer Klotz could make the

arrest. *See Nakamura v. City of Hermosa Beach*, 2009 WL 1445400, at *8 (C.D. Cal. 2009); *Abdel-Shafy v. City of San Jose*, 2019 WL 570759, at *7 (N.D. Cal. 2019); *Vanegas v. City of Pasadena*, 2021 WL 1917126, at *6 (C.D. Cal. 2021). And so did we. *See Kuhlken v. Cnty. of San Diego*, 764 F. App'x 612 (9th Cir. 2019).

Thus, even if Vanegas's failure to identify himself did not provide probable cause to arrest under § 148(a)(1)—a question we need not and do not decide—Officer Klotz had "breathing room" to make the purported mistake of law and he and the other officers are entitled to qualified immunity for Vanegas's arrest.

## III.

## § 1983 Claim Against the City

Vanegas also appeals the dismissal of his § 1983 claim against the City of Pasadena. Civil rights suits against local governments for constitutional violations by its officers cannot proceed on respondeat superior liability. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). Known as *Monell* liability, a plaintiff must instead establish that "the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation they suffered." *Id.* (simplified); *see also Monell*, 436 U.S. at 691.

*Monell* liability can turn on a municipality's failure to train its officers, but the failure must amount to a "deliberate indifference to the rights of persons with whom the police come into contact." *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). To allege such a failure, the plaintiff must establish "sufficient facts to support a

reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153–54 (9th Cir. 2021). *Monell* liability is "at its most tenuous where a claim turns on a failure to train." *Id.* at 1154 (simplified).

Vanegas alleged a failure to train and argues that factual disputes exist on whether the City of Pasadena failed to train its officers on the "well-established" right to refuse to identify oneself prior to arrest. But, as we discussed above, we doubt that any such right is so "well established" that its alleged omission from training would constitute deliberate indifference on the part of the City. *See Flores*, 758 F.3d at 1158 (the failure to train must be "a conscious or deliberate choice on the part of a municipality" (simplified)). And a failure-to-train theory of *Monell* liability usually requires a "pattern of similar constitutional violations by untrained employees." *See id.* at 1159 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). Vanegas fails to establish such a pattern here. *See also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407–08 (1997) (explaining that a "one-time negligent administration" of a training program does not "tend to show . . . the lack of proper training"). We thus affirm the dismissal of Vanegas's claim against the City.

## IV.

Because probable cause supports his arrest under California Penal Code § 415(2) and qualified immunity shields the officers from liability for his arrest under

California Penal Code § 148(a)(1), we hold that Vanegas is not entitled to relief under § 1983.

**AFFIRMED.**

---

BUMATAY, Circuit Judge, concurring:

Although we properly affirmed the dismissal of Javier Vanegas's false-arrest claim on qualified immunity, I'm left wondering whether California Penal Code § 148(a)(1) authorizes officers to arrest a person based on the refusal to produce identification during a police investigation.

This question is important because probable cause generally defeats a claim like Vanegas's, *Nieves v. Bartlett,* 139 S. Ct. 1715, 1727 (2019), and we look to state law to determine "[w]hether an officer is authorized to make an arrest," *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).

So, I think it's reasonable to consider whether § 148(a)(1) provided the probable cause to arrest Vanegas under the facts here. I suspect it doesn't.

\*

California Penal Code § 148(a)(1) punishes "[e]very person who willfully resists, delays, or obstructs any public officer [or] peace officer, . . . in the discharge or attempt to discharge any duty of his or her office or employment."

Several federal cases have interpreted the law to mandate cooperation with an officer's request to produce identification during a valid police investigation. *See, e.g.*, *Kuhlken v. Cnty. of San Diego*, 764 F. App'x 612, 613 (9th

Cir. 2019) (unpublished) ("Deputy Smith had probable cause to arrest Fox for a violation of California Penal Code § 148(a)(1) . . . . It is undisputed that Fox refused to provide identification upon request[.]"); *Abdel-Shafy v. City of San Jose*, 2019 WL 570759, at *7 (N.D. Cal. 2019) ("Once Plaintiff refused to identify herself, the Officers then had the probable cause to arrest her for resisting, obstructing, or delaying the investigation under Cal. Penal Code § 148(a)(1)."); *Nakamura v. City of Hermosa Beach*, 2009 WL 1445400, at *8 (C.D. Cal. 2009) ("Plaintiff . . . hamper[ed] the investigation by refusing to provide either his name or identification," which provided probable cause to arrest under § 148(a)(1)). As a matter of plain text and common sense, these decisions are reasonable interpretations of the law. After all, failing to produce an identification will often delay a police investigation.

But California courts have not been so quick to endorse that view of § 148(a)(1). Instead, under California law, the scope of the law appears more nuanced. No California court, for example, has definitively ruled that § 148(a)(1) criminalizes the mere failure to identify oneself to police officers during a valid police investigation. While several California cases have blessed § 148(a)(1) arrests involving the failure to produce identification, those cases seemingly required something more.

Take a recent example—*People v. Knoedler*, 257 Cal. Rptr. 3d 586, 589 (Cal. App. Dep't Super. Ct. 2019). There, the defendant was caught with an open beer can on the street and an officer asked him for an identification to issue him a citation. *Id.* at 587. The defendant refused and was charged with resisting under § 148(a)(1). *Id.* at 588. While accepting that the "failure to identify oneself cannot, on its own, justify an arrest" under § 148(a)(1), the court upheld the arrest

because the "officer was attempting to write defendant a citation for a municipal code infraction." *Id.* at 589. The arrest was valid because officers had both "reasonable suspicion for the initial detention *and* probable cause to cite [the] defendant." *Id.* "Without any way to identify the person who is being cited," the court concluded that "the police cannot perform their duties." *Id.*

Another California court suggested that "a simple refusal to identify one's self" doesn't violate § 148(a)(1). *People v. Lopez*, 13 Cal. Rptr. 3d 921, 924 (Cal. Ct. App. 2004). In that case, the court affirmed a § 148(a)(1) conviction when the defendant was "belligerent, refused to give his name, refused to keep his hands visible, and refused to submit to a patdown." *Id.* But the court made clear that the defendant's arrest was a "far cry" from a mere "refusal to identify himself." *Id.* Instead, the lack of cooperation was "coupled with" belligerent conduct that interfered with the officer's patdown search. *Id.*

On the other hand, a § 148(a)(1) charge is appropriate for failing to disclose one's identity in the "narrow context of a booking interview" for a felony arrest. *People v. Quiroga*, 20 Cal. Rptr. 2d 446, 450–51 (Cal. Ct. App. 1993). After a felony arrest takes place, the court held that "[w]ithout knowing the identity of a suspect, it is impossible to arrange for bail or to conduct an arraignment" and it would "impede[] the administration of justice." *Id.* at 452. But the court drew the distinction narrowly. *Before* a felony arrest, the court warned that "the statute must be applied with great caution." *Id.* at 450. So, for example, the court noted that a person who protested repeatedly before complying with an officer's orders could not be prosecuted under § 148(a)(1) because such actions were protected by the First Amendment. *Id.* at 448. Indeed, one California court has

held that even refusing to give identification after a misdemeanor arrest, but pre-booking, isn't prosecutable under § 148(a)(1). *See In re Chase C.*, 196 Cal. Rptr. 3d 381, 392 (Cal. Ct. App. 2015).

And finally, back in 1980, another California court questioned whether "a person who merely refuses to identify himself or to answer questions" violates § 148(a)(1). *In re Gregory S.*, 169 Cal. Rptr. 540, 548 (Cal. Ct. App. 1980). There, when a 15-year-old boy refused to identify himself or respond to the questions of an officer investigating a neighbor's complaint of "mischief," the court held the officer had no ground to arrest him. *Id.* at 543, 548. In part, the court concluded that the officer already partially knew the boy's identity so it was doubtful that his refusal to identify himself delayed the investigation. *Id.* at 548. But the court also noted that the California Legislature had required persons to identify themselves in several prescribed situations, *see, e.g.*, Cal. Veh. Code §§ 40302, 12951, and that because none of those statutory conditions existed, a § 148(a)(1) charge was improper. *Id.*

In sum, I have found no California court case that categorically holds that the failure to identify oneself to an officer during a police investigation—without more— furnishes probable cause to arrest under § 148(a)(1). Indeed, California courts have suggested the opposite. Nor have the officers here offered a California case finding probable cause for § 148(a)(1) under similar facts. *See Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 954 (9th Cir. 2010) (Probable cause "must . . . exist under some specific criminal statute."). So even though the officers must receive qualified

immunity here, Javier Vanegas might be right that officers lacked probable cause to arrest him for violating § 148(a)(1).

\*

I welcome Judge Bress's spirited disagreement with my analysis of California law.  Such debates, I hope, will help clarify the law.  I make just a few points in rebuttal.

First, I am truly agnostic on whether § 148(a)(1) *should* permit the arrest of a person who fails to identify themselves to investigating officers.  My concern here is that federal courts may have gotten out ahead of California courts in interpreting the law.

Second, I agree with Judge Bress that the Fourth Amendment protects officers who make reasonable mistakes about whether the law supports an arrest.  *See Heien v. North Carolina*, 574 U.S. 54, 66 (2014).  But it promotes the law to clarify whether a mistake was made in the first place.

Third, contrary to Judge Bress's view, this question was squarely presented in this appeal.  Deciding this case on other grounds doesn't make the issue irrelevant.

And finally, if Judge Bress is right that California law is so clear, it should have been an easy task to come up with California caselaw supporting his view.  The lack of any should give us all pause.

---

BRESS, Circuit Judge, concurring:

I am compelled to write separately in this straightforward case only to address Judge Bumatay's separate concurring

opinion, which expounds on California criminal law and suggests that various federal court decisions interpreting California law may be wrongly decided. I write to make clear that, in my respectful view, Judge Bumatay's evaluation of California law is both unnecessary to our resolution of this case and substantively incorrect, advocating a narrow interpretation of California Penal Code § 148(a)(1) that California courts have not embraced.[1]

## I

Judge Bumatay writes separately on the question of whether California law "holds that the failure to identify oneself to an officer during a police investigation—without more—furnishes probable cause to arrest under § 148(a)(1)." Concurrence 21. That question is not presented in this case. Vanegas threatened an attorney following a court proceeding. That alone provided probable cause for his arrest under California Penal Code § 415(2), as the majority opinion correctly holds. Maj. Op. 11–12. And so that is sufficient to dispose of Vanegas's § 1983 claim asserting a Fourth Amendment violation for allegedly wrongful arrest.

There was also independent probable cause to arrest Vanegas for violating California Penal Code § 148(a)(1), which punishes "[e]very person who willfully resists, delays, or obstructs any public officer [or] peace officer, . . . in the discharge or attempt to discharge any duty of his or her office or employment." Officer Klotz did not just stop Vanegas

---

[1] All my references to the concurring opinion refer to Judge Bumatay's separate concurring opinion, not Judge Benitez's separate concurrence (the latter expresses some views that are similar to mine here).

randomly on the street and demand identification; he stopped Vanegas in response to a report of a person who was threatening another near a courthouse.  Given the centrality of Vanegas's identity to the investigation, officers had probable cause to arrest Vanegas under § 148(a)(1) for "resist[ing], delay[ing], or obstruct[ing]" a lawful investigation into a § 415(2) violation—a violation for which officers already had probable cause to arrest Vanegas in the first place.  *See Edgerly v. City & County of San Francisco*, 599 F.3d 946, 953 (9th Cir. 2010) (an officer has probable cause to arrest if the facts and circumstances "were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense") (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

The majority opinion holds that the officers should receive qualified immunity for any arrest under § 148(a)(1) because it was not clearly established that they lacked probable cause to make an arrest on that basis.  Maj. Op. 14–16.  That is true as far as it goes, which is what allows me to join the majority opinion in full.  Of course, this holding is itself merely an alternative ground for decision because officers had probable cause to arrest Vanegas for violating § 415(2), as the majority opinion earlier concludes.  So, this is an easy case: Vanegas violated at least two California criminal laws, there was probable cause to arrest him under either or both, and at the very least the officers get qualified immunity.

Judge Bumatay's concurrence nonetheless opines on whether "the failure to identify oneself to an officer during a police investigation—without more—furnishes probable cause to arrest under § 148(a)(1)" (by "more," I take the concurrence to mean "more" than refusal to provide identification in response to a valid *Terry* stop, *see Terry v.*

*Ohio*, 392 U.S. 1 (1968)).  Concurrence 21.  There is no reason to opine on that issue here because even if "more" is required for a violation of California criminal law, we have the "more" here, namely, the earlier violation of § 415(2), for which there was already independent probable cause to arrest Vanegas.  We cannot disaggregate the sequence of events here into the earlier harassment and the later refusal to provide identification; the latter was directly connected to the former.

As a matter of federal constitutional law under the Fourth Amendment, the Supreme Court's decision in *Hiibel v. Sixth Judicial District Court of Nevada, Humboldt County*, 542 U.S. 177, 187–88 (2004), resolves that a person can be lawfully arrested for failure to provide identification during a valid *Terry* stop, if the request for identification is reasonably related to the stop.  There is no question that officers here at the very least had reasonable suspicion to stop Vanegas under *Terry* (indeed, the majority opinion holds they had probable cause to *arrest* him under § 415(2)).  So the only point on which Judge Bumatay's concurrence is separately opining is whether California's substantive criminal law in § 148(a)(1) should be interpreted more narrowly than the nearly identically worded Nevada law that the Supreme Court addressed in *Hiibel*.

That question of California law is not only not presented on the facts of this case, deciding it would be unnecessary even with the right facts.  With sufficient supporting information, officers are entitled to make arrests based on reasonable, even if ultimately mistaken, views of the law. *See, e.g.*, *Heien v. North Carolina*, 574 U.S. 54, 66 (2014); *Barrera v. City of Mt. Pleasant*, 12 F.4th 617, 620–21 (6th Cir. 2021).  Even if the facts presented it in this case, we still would not need to resolve whether California law would

criminalize a failure to provide identification in response to a valid *Terry* stop, or whether something "more" would be required.

Why?  Because the officers' belief that they had probable cause to arrest in that situation would at least be a reasonable interpretation of California law.    And because it is reasonable, "we need not decide exactly what [§ 148(a)(1)] means."  *Barrera*, 12 F.4th at 621; *see also id.* at 624 (explaining that "we need not resolve each mete and bound of" a state criminal statute because "[w]e need only decide whether the officers' interpretation sinks to unreasonable"). The majority opinion winds up in essentially the same place by resolving the § 148(a)(1) question under the second prong of the qualified immunity analysis.  *See* Maj. Op. 14–16; *see also Barrera*, 12 F.4th at 624–25 (noting that whether a court concludes there is no constitutional violation or no clearly established law, "either one permits a federal court to resolve a qualified-immunity defense without deciding exactly what state law means").

I thus see no reason to broach the not-presented, legally irrelevant question of California state law that Judge Bumatay's concurrence considers.  Questions of state law, including the reach of state criminal law, are for the states in the first instance.  Sometimes we find ourselves needing to address them in a given case.  But there is no reason to do so here, especially when the interpretation of California law that seemingly concerns Judge Bumatay would be constitutional under *Hiibel*.

II

Because Judge Bumatay's concurring opinion has raised the issue, however, it is worth making clear that I do not think its reading of California law is correct.    The

concurrence asserts that "California courts have suggested" that a person cannot be arrested based on the refusal to produce identification to a police officer during a valid *Terry* stop. Concurrence 21. That seems to me incorrect: the California cases the concurrence cites do not demonstrate that something more than a valid *Terry* stop is required before a refusal to provide identification comes within the prohibitory bounds of § 148(a)(1).

Consider *People v. Knoedler*, 257 Cal. Rptr. 3d 586 (Cal. App. Dep't Super. Ct. 2019). The concurrence suggests *Knoedler* "accept[ed]" that "the 'failure to identify oneself cannot, on its own, justify an arrest' under § 148(a)(1)." Concurrence 19 (quoting *Knoedler*, 257 Cal. Rptr. 3d at 589). But rather than "accepting" that proposition, *Knoedler*—which affirmed a § 148(a)(1) conviction— merely quoted it from *Belay v. City of Gardena*, 2017 WL 1628398 at *4 (C.D. Cal. Apr. 27, 2017). *Belay*, in turn, quoted and relied on earlier Ninth Circuit cases that were decided before *Hiibel*, and that contain statements of law squarely at odds with that case. *See Belay*, 2017 WL 1628398 at *4 (quoting *United States v. Christian*, 356 F.3d 1103, 1106 (9th Cir. 2004)) (citing *Martinelli v. City of Beaumont*, 820 F.2d 1491, 1494 (9th Cir. 1987); *Lawson v. Kolender*, 658 F.2d 1362 (9th Cir. 1981); and *Carey v. Nevada Gaming Control Bd.*, 279 F.3d 873, 881 (9th Cir. 2002)). *Knoedler* therefore does not support the concurrence's interpretation of California law.

The concurrence points also to *People v. Lopez*, 13 Cal. Rptr. 3d 921 (Cal. Ct. App. 2004), claiming that the court there "suggested" that "'a simple refusal to identify one's self' does not violate § 148(a)(1)." Concurrence 20. But *Lopez* does not "suggest" that. The defendant in *Lopez*, who was suspected of threatening a woman and potentially

carrying a gun, was "combative," kicked officers who were attempting to pat him down, and refused to comply even after officers shot him with a nonlethal beanbag. 13 Cal. Rptr. 3d at 923. *Lopez* therefore presented a clear-cut violation of § 148(a)(1). In noting that the defendant's resistance went far beyond refusing to identify himself, *Lopez* did not suggest that a refusal to self-identify cannot amount to a violation of § 148(a)(1). *See id.* The court was merely emphasizing that the case before it was an easy one, and it was distinguishing *Brown v. Texas*, 443 U.S. 47 (1979), in which officers demanded identification while "lack[ing] *any* reasonable suspicion" of criminal conduct. *See Lopez*, 13 Cal. Rptr. 3d at 924 (quoting *Brown*, 443 U.S. at 53) (emphasis added). *Lopez* was not purporting to define any kind of floor for violating § 148(a)(1).

The other cases the concurrence cites were themselves distinguished in *Knoedler*. *Knoedler* distinguished *People v. Quiroga*, 20 Cal. Rptr. 2d 446 (Cal. Ct. App. 1993), on the grounds that it considered the defendant's refusal to identify himself *after* arrest. *Knoedler* 257 Cal. Rptr. 3d at 589. *Knoedler* explained that a misdemeanor defendant's post-arrest failure to disclose his identity does "not delay or obstruct the arresting officer because '[t]he arrest ha[s] already been effected' and the defendant ha[s] not yet been brought to the jail for booking." *Id.* (quoting *Quiroga*, 20 Cal. Rptr. 2d at 449) (alteration in original). *Knoedler* distinguished *In re Chase C.*, 196 Cal. Rptr. 3d 381 (Cal. Ct. App. 2015), for the same reason. *See Knoedler*, 257 Cal. Rptr. 3d at 589–90.

In contrast, Vanegas here refused to identify himself to an officer who had not yet arrested him and who was searching for him by name. And although the concurrence correctly notes that *Quiroga* called for "great caution" when

applying § 148(a)(1), this warning was based upon the court's concern that applying the statute to speech could sometimes run afoul of the First Amendment. *Quiroga*, 20 Cal. Rptr. 2d at 450. No such concern has been raised here. Even so, *Quiroga* itself noted that "[n]o decision has interpreted [§ 148(a)(1)] to apply only to physical acts, and the statutory language does not suggest such a limitation." *Id.*

Finally, *Knoedler* also distinguished *In re Gregory S.*, 169 Cal. Rptr. 540, 548 (Cal. Ct. App. 1980), another case on which the concurrence relies. Although that case found no violation of § 148(a)(1) based on the defendant's failure to identify himself, "the court made it clear its holding was fact-specific." *Knoedler*, 257 Cal. Rptr. 3d at 590 (citing *In re Gregory S.*, 169 Cal. Rptr. at 548). Indeed, in that case, the officer recognized the defendant from previous interactions, and already knew his surname and address. *In re Gregory S.*, 169 Cal. Rptr. at 543, 548. Under those circumstances, the defendant's failure to provide his first name "could not have 'delayed the officer to a degree justifying arrest.'" *Knoedler* 257 Cal. Rptr. 3d at 590 (quoting *In re Gregory S.* 169 Cal. Rptr. at 548).

*Gregory S.* thus does not support any broader conclusions about the reach of § 148(a)(1), as the concurrence would ascribe. The concurrence quotes *Gregory S.* as "question[ing] whether 'a person who merely refuses to identify himself or to answer questions' violates § 148(a)(1)." Concurrence 21 (quoting *Gregory S.*, 169 Cal. Rptr. at 548). But the full quote is: "We find no authority to support the [trial] court's legal conclusion that a person who merely refuses to identify himself or to answer questions *in a context similar to that before us* thereby violates Penal

Code section 148 or otherwise furnishes ground for arrest." *Gregory S.*, 169 Cal. Rptr. at 548 (emphasis added).

In sum, California courts have not suggested that a mere refusal to identify oneself cannot justify a conviction or arrest under § 148(a)(1) unless there is something "more" than reasonable suspicion for the precipitating stop. California courts could of course so hold. But I would have refrained from unnecessarily suggesting that they have.[2]

Because Judge Bumatay's concurrence rests on an overreading of California case law, it also errs in implying that three federal decisions—*Kuhlken v. County of San Diego*, 764 F. App'x 612 (9th Cir. 2019), *Abdel-Shafy v. City of San Jose*, 2019 WL 570759 (N.D. Cal. Feb. 12, 2019) (Koh, J.), and *Nakamura v. City of Hermosa Beach*, 2009 WL 1445400 (C.D. Cal. May 20, 2009) *aff'd,* 372 F. App'x 787 (9th Cir. 2010)—may have misinterpreted the scope of § 148(a)(1). Concurrence 18–19. There is no reason to think that is true. And none of these cases involved a random demand from a police officer for identification.

In *Kuhlken*, an officer responded to a report that a woman had used her car to run over another person. *Kuhlken v. County of San Diego*, 2018 WL 454444 at *2 (S.D. Cal. Jan. 16, 2018), *aff'd,* 764 F. App'x 612 (9th Cir. 2019). Because of the involvement of a vehicle, the woman was obligated to provide her driver's license to the officer under California Vehicle Code § 12951. *Id.* at *6. Yet when

---

[2] Judge Bumatay faults me for not citing a California case definitively stating that failure to provide identification in response to a valid *Terry* stop qualifies as a violation of § 148(a)(1). Concurrence 22. But it is not my position that such a case exists. My position is that Judge Bumatay's concurrence errs in suggesting that California courts have endorsed the opposite rule.

the officer requested the woman's identification, she refused to provide it and physically resisted being detained. *Id.* at *4. Under these circumstances, we did not err when we concluded that the officer had probable cause to arrest the woman under § 148(a)(1) (and § 12951(b)), in the course of investigating "a potentially serious crime." 764 F. App'x at 613.

Similarly, in *Abdel-Shafy*, 2019 WL 570759, the plaintiff was arrested for violating § 148(a)(1). The plaintiff had taken part in a verbal altercation with a man she did not know, and the plaintiff's husband subsequently showed up and apparently assaulted the man. *Id.* at *1–2 & n.1. When officers arrived, the man identified the plaintiff and her husband as the parties involved in the dispute. *Id.* at *1. The plaintiff refused to identify herself despite repeated requests and warnings that she would be arrested if she continued to refuse. *Id.* at *2. The plaintiff was arrested and ultimately charged with violating § 148(a)(1). *Id.*

When she later brought unlawful arrest claims under § 1983, the district court dismissed her claims. *Id.* at *8. The court's holding was explicitly premised on its determinations that the plaintiff was subject to a lawful *Terry* stop, and that the officers' request for identification was reasonably related to that stop. *Id.* I see no reason to doubt the district court's conclusion in that case.

Finally, the concurrence suggests that *Nakamura*, 2009 WL 1445400, held that a mere refusal to identify oneself alone provides probable cause to arrest under § 148(a)(1). Concurrence 19. But in *Nakamura*, a person identified as a possible stalker had failed to stop walking away despite an officer's repeated instructions to stop, giving the officer the reasonable impression that the suspect was trying to flee. 2009 WL 1445400 at *4, *6, *8. Even once the suspect

acknowledged the officer and stopped, he refused to provide his identification. *Id.* at \*8. The district court concluded that, "*[t]aken as a whole*, [the suspect's] uncontroverted behavior provided [the officer] with probable cause to arrest him" for violating § 148(a)(1). *Id.* (emphasis added). Again, nothing in California case law suggests this reasonable determination was infirm. Indeed, Judge Bumatay's concurrence itself acknowledges that the three federal cases he identifies reflect "reasonable interpretations of the law" based on "plain text and common sense." Concurrence 19.

\*     \*     \*

In short, California case law does not support the limitations Judge Bumatay's concurrence would impose on § 148(a)(1), nor is there reason to question the federal cases he identifies. But my broader point is that the debate here is beside the point: future § 1983 cases involving § 148(a)(1) will not need to resolve the exact scope of that provision, just as we have no need to resolve it here. Nor could we resolve it anyway. The matter is for the California courts to decide.

BENITEZ, District Judge, concurring:

I agree with the court that summary judgment was properly granted for the City of Pasadena and its police officers. I write separately to explain that this is an easy case.

Appellant paints this as a case of the police unconstitutionally arresting him for simply refusing to divulge his identity. Although, undoubtedly, an arrest for refusing to give one's name without at least reasonable suspicion would be an unreasonable seizure under the Fourth

Amendment, that is not this case. This was not a slow crime day for the police. Time was not passing idly by with no police work to do and a quiet police radio. The officer was not walking down streets and interrogating citizens about crimes yet to come. That would be an unreasonable seizure. *Brown v. Texas*, 443 U.S. 47 (1979).

No. In this case, a crime had been reported. From his police radio, the police officer had a description (a man), a place (walking north near the courthouse on Garfield Avenue), and a name: Javier Vanegas. When Officer Klotz found a lone man walking near the courthouse travelling north on Garfield Avenue he stopped the suspect and asked for his name. Vanegas' name was reasonably related to the circumstances justifying the stop. His name was central to the investigation of a crime, whether the crime was stalking (Cal. Pen. Code § 646.9) or maliciously disturbing another by loud noise (Cal. Pen. Code § 415). At that point, the detective had probable cause to arrest for either offense and he had probable cause to arrest for violating Cal. Pen. Code § 148(a)(1) when Vanegas refused to disclose his name. *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 187–88 (2004). Otherwise, the police officer would have been facing a Hobson's choice: if the suspect did not identify himself, the officer would have to either let the suspect escape or possibly arrest and traumatize an innocent citizen. That would be unreasonable.

Even if the officer did not have probable cause to arrest for the reported crime, Vanegas obstructed a permissible investigation. "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence

of good police work to adopt an intermediate response. . . . A brief stop of a suspicious individual, *in order to determine his identity* or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams*, 407 U.S. 143, 145–146 (1972) (emphasis added). And reasonableness is the cornerstone of the Fourth Amendment.