NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

DEC 7 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-50127 |
| Plaintiff-Appellee, | D.C. No. 8:20-cr-00142-SB-1 |
| v. | |
| DANIEL WAMPLER, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Stanley Blumenfeld, Jr., District Judge, Presiding

Submitted December 5, 2023**
Pasadena, California

Before: BEA, M. SMITH, and VANDYKE, Circuit Judges.

After police seized illegal narcotics, drug paraphernalia, and firearms during

a search of his person and vehicle, Daniel Wampler was indicted for drug- and

firearm-related offenses. The district court denied Wampler's motion to suppress.

He then pleaded guilty and was sentenced to 180 months imprisonment. On appeal,

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

the parties dispute whether the protective search and emergency aid doctrines permitted the responding officer to open the passenger's side door of Wampler's vehicle. The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

Shortly after a 911 caller reported that an unidentified man was slumped over in the driver's seat of a white Mustang parked in the garage of an apartment complex, Anaheim Police Officer Scott Eden responded to the scene. The 911 caller reported a "red dot scope" box lying next to the car, but a police dispatcher told Eden only that the box was "next to" Wampler. Except for the box's location, the dispatcher's notes accurately summarized the 911 caller's report.

When Eden approached the vehicle, he saw no red dot scope box lying outside the vehicle, but the scene was otherwise as described by the 911 caller and the dispatcher. The driver's side door was open, but the vehicle's windows were tinted, preventing Eden from seeing inside the car. When Eden opened the passenger's side door to assess the situation further and put space between himself and Wampler, he saw two handguns in the center console. Wampler awoke quickly after Eden opened the door, and police officers subsequently conducted a search of his person and his vehicle.[1]

---

[1] Wampler's motion to suppress challenged only the initial decision to open the passenger's side door. The parties appear to agree that if opening the door was justified, the handguns created probable cause for the subsequent search.

This court reviews the denial of a motion to suppress evidence de novo and the district court's factual findings for clear error. *United States v. Hylton*, 30 F.4th 842, 846 (9th Cir. 2022). Where, as here, the parties do not dispute the relevant facts, the only question is whether Officer Eden's decision to open the passenger's side door was reasonable under the Fourth Amendment. The government contends that it was justified both as a protective search and under the emergency aid doctrine. Because we conclude that Eden's decision was a reasonable protective search, we need not consider whether it was also justified under the emergency aid doctrine.

An officer may search the passenger compartment of a vehicle if the officer possesses "specific and articulable facts which, taken together with the rational inferences from those facts," warrant a conclusion that a suspect is dangerous or may gain immediate access to weapons. *Michigan v. Long*, 463 U.S. 1032, 1049 (1983) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). The officer needs only reasonable suspicion, not probable cause. *United States v. I.E.V.*, 705 F.3d 430, 434–35 (9th Cir. 2012). The reasonable suspicion standard is "an objective one," *United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016), focusing on "the facts known … at the time of the stop." *Kansas v. Glover*, 140 S. Ct. 1183, 1188 (2020).

But "[e]ven where certain facts might support reasonable suspicion," a search "is not justified when additional or subsequent facts dispel or negate the suspicion." *Thomas v. Dillard*, 818 F.3d 864, 877 (9th Cir. 2016). Citing *Dillard*, Wampler

argues that any reasonable suspicion was dispelled because the scope box—the only "specific and articulable fact[]" supporting reasonable suspicion—was not visible as Eden approached the car and was in fact never found.[2]

Wampler's reliance on the scope box's absence is misplaced. At the time he opened the door, Officer Eden did not know—as he later would—that the red dot scope box would not be found. Nor did the fact that the box was not immediately visible to Eden as he approached the car dispel his reasonable suspicion. When Eden arrived in the garage, he was relying on the dispatcher's notes, which stated only that the box was "next to" Wampler, not that it was outside the car. From Eden's perspective, the box could have just as easily been "next to" Wampler inside the car as it could have been "next to" him outside it.

Wampler contends we should charge Eden with the entirety of the dispatcher's knowledge of the situation, including the reported location of the box outside the car. *See United States v. Fernandez-Castillo*, 324 F.3d 1114, 1118 (9th Cir. 2003). Even assuming it would be appropriate to charge Eden with such constructive knowledge, it still would not dispel his reasonable suspicion. While the box's absence may reasonably support an inference that the report was wrong in the first

---

[2] Wampler also contends that the box was insufficient in any event to support reasonable suspicion. It is undoubtedly true that the presence of a scope box does not guarantee the presence of a scope. Nor does the presence of a scope guarantee the presence of a gun. But certainty is not the standard, and it is not unreasonable to suspect that where firearm attachments may be, firearms may be also.

4

place, it just as reasonably would support an inference that the box had been moved inside the vehicle after the call was made or an inference that the 911 caller took the box with him. Equivocal facts do not dispel reasonable suspicion. *See, e.g.*, *Glover*, 140 S. Ct. at 1191 (holding stop was justified by initial impression where deputy "possessed no exculpatory information—let alone sufficient information to rebut the reasonable inference").

The cases Wampler cites in support are each readily distinguishable. In *Dillard*, for example, reports of domestic violence were clearly contradicted by the facts on the scene, where the reported victim "vehemently and repeatedly denied" any abuse. 818 F.3d at 883. And in *United States v. Thomas*, an officer investigating a report of counterfeiting had "a clear view" of the defendant and "could see that [he] did not match the description of either of the suspects" provided to him by a police dispatcher. 863 F.2d 622, 624, 628 (9th Cir. 1988). In each of these cases, the facts on the ground left no room to reasonably rely on the details of the initial report. Eden encountered no such contradictory facts.[3]

Because Eden's warrantless search was justified as a protective search, it was reasonable under the Fourth Amendment, and the district court properly denied Wampler's motion to suppress.

---

[3] Because Eden reasonably relied on the dispatcher's report at all times leading up to the search, the panel does not reach the government's alternate argument that the search was justified even in the absence of any report of a red dot scope box.

**AFFIRMED.**