**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SEAPLANE ADVENTURES, LLC,
*Plaintiff-Appellant/*
*Cross-Appellee,*

v.

COUNTY OF MARIN,
*Defendant-Appellee/*
*Cross-Appellant.*

Nos.  21-17105
22-15027

D.C. No.
3:20-cv-06222-
WHA

OPINION

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued and Submitted March 27, 2023
San Francisco, California

Filed June 26, 2023

Before: Ronald M. Gould and Sandra S. Ikuta, Circuit
Judges, and Edward R. Korman,* District Judge.

Opinion by Judge Gould;
Concurrence by Judge Ikuta

---

* The Honorable Edward R. Korman, United States District Judge for the
Eastern District of New York, sitting by designation.

# SUMMARY[**]

## Civil Rights/Equal Protection

The panel affirmed the district court's summary judgment in favor of the County of Marin, vacated as moot the district court's preemption order, and remanded, in an action brought pursuant to 42 U.S.C. § 1983 by Seaplane Adventures, an air carrier operating in Marin County, alleging an equal protection claim related to the County's COVID-19 enforcement actions against Seaplane.

Seaplane provides air tours, charter flights, and flight instruction. Following communications with the County regarding its failure to comply with the County's modified COVID-19 health order related to its commercial sight-seeing flights, Seaplane ceased operations that were in violation of the health order and filed suit. Seaplane raised an equal protection "class of one" claim, alleging that the County intentionally treated Seaplane differently from other similarly situated groups.

The panel held that regardless of what the relevant comparison category was for comparing whether the County's actions were rooted in a rational basis, given that a deadly virus was tearing into the most vulnerable throughout the County, country, and world, the actions of the County met the rational basis standard as it took actions to mitigate the damage of the COVID-19 virus. To the extent that the relevant distinction defining the scope of the class was recreational and non-recreational flights, the rational basis

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

was abundantly clear: to lower transmission of COVID-19 by restricting activities not defined as essential. To the extent that Seaplane was alleging differential treatment between Seaplane and other air carriers providing recreational flights in violation of the health order, the rational basis for the County's action was also abundantly clear: it simply did not know of the other violators.

Addressing the County's cross-appeal of the district court's grant of limited declaratory relief based on a finding that federal law preempted parts of the County's health order related to aviation, the panel, noting that both parties agreed that the modified health orders were no longer in effect, vacated the district court's order as moot.

Concurring in the judgment, Judge Ikuta stated that because the panel could affirm the district court's grant of summary judgment in favor of the County on the simple ground that there was no evidence that the County knew of any similarly situated violators, it was not necessary to decide whether the County's health orders were rational, an issue irrelevant to Seaplane's equal protection claim.

**COUNSEL**

John E. Sharp (argued) and Gillian M. Edmonds, Law Offices of John E. Sharp, San Rafael, California, for Plaintiff-Appellant.

Jacy C. Dardine (argued) and Brandon W. Halter, Deputy County Counsels; Brian E. Washington, County Counsel; Office of the County Counsel, County of Marin; San Rafael, California; for Defendant-Appellee.

**OPINION**

GOULD, Circuit Judge:

In March 2020, the United States confronted a threat unlike any in recent times: the COVID-19 pandemic. As of the filing of this opinion, the Centers for Disease Control and Prevention has reported over 1.1 million deaths from the virus in the United States alone,[1] while millions of others suffered from the direct and indirect effects of the virus. Although they varied in their responses, different levels of government operated in distinct, yet interlocked fashion to address this drastic challenge facing our nation and world. Although the worst of the pandemic has receded behind us, our role as judges is to ensure that the Constitution and applicable state and local laws are properly followed, cognizant of our position not as public health officials operating in the midst of a dangerous health emergency, but rather as a generalist court bound to ensure the proper deference is given to local governmental officials. *See S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613–14 (2020) (Roberts, C.J., concurring) (explaining the latitude properly given to "politically accountable officials of the States" during a dynamic and uncertain time).

The County of Marin ("the County"), at the onset of the pandemic in March 2020, took action to limit the spread of COVID-19 and protect its vulnerable citizens by issuing a public health order that placed certain restrictions on

---

[1] *See* Covid Data Tracker, Centers for Disease Control and Prevention, https://covid.cdc.gov/covid-data-tracker/ (visited on May 26, 2023). *See also Weekly Review, Signing Off*, Centers for Disease Control and Prevention (May 12, 2023), https://perma.cc/YC53-94FY (displaying the total deaths as of May 12, 2023).

allowable activities.  The County continually modified its original health order based on data and increased knowledge of how the virus spreads.  During the time that a modified version of the health order was in effect, the County learned of aviation activities by Seaplane Adventures, LLC ("Seaplane") that violated the applicable health order and began a dialogue with Seaplane regarding its failure to comply with the County's health order.  Seaplane ultimately ceased its operations that were in violation of the County's health order and filed the suit before us today.

Seaplane appeals the district court's grant of summary judgment in favor of the County, in which the district court rejected Seaplane's equal protection claim under 42 U.S.C. § 1983 related to the County's enforcement actions against Seaplane.  The County cross-appeals the district court's grant of limited declaratory relief based on a finding that federal law preempts parts of the County's health orders related to aviation.  We affirm the district court's grant of summary judgment to the County and vacate as moot the district court's preemption order that granted limited declaratory relief.

## I.    Background

### A.  The County's Efforts to Combat COVID-19

On March 16, 2020, the County of Marin issued an order "directing all individuals living in the county to shelter at their place of residence" with the express aim of "slow[ing] the spread of COVID-19 to the maximum extent possible" while simultaneously "enabling essential services to continue."  The order directed "all businesses and governmental agencies to cease non-essential operations at physical locations in the county" and provided a list of "essential" activities that fell into exceptions to the general

rule. The order, promulgated under relevant sections of the California Health and Safety Code, was based on:

> evidence of increasing occurrence of COVID-19 within the County and throughout the Bay Area, scientific evidence and best practices regarding the most effective approaches to slow the transmission of communicable diseases generally and COVID-19 specifically, and evidence that the age, condition, and health of a significant portion of the population of the County places it at risk for serious health complications, including death, from COVID-19.

The County's March 16 order was signed by Dr. Matt Willis, the Health Officer of the County of Marin.

The County did not operate in a vacuum. In California, the Governor had declared a state of emergency on March 4, 2020,[2] *see* Cal. Exec. Order N-33-20 (March 19, 2020) (referencing the March 4th declaration of a state of emergency); while on March 13, 2020, the President of the United States had proclaimed a national emergency related to COVID-19. Proclamation No. 9994, 85 Fed. Reg. 15337 (Mar. 13, 2020). Both actions occurred prior to the County's issuance of its March 16, 2020 health order. The California state of emergency is explicitly referenced and incorporated by the County's original order, along with companion declarations of a local health emergency by the County's

---

[2] A copy of the press release released concurrently with the state of emergency is located at https://perma.cc/699N-AYCK.

Board of Supervisors, the health officer, and the assistant director of emergency services.  On March 19, 2020, three days after the initial issuance of the County's March 16 order, the Governor also issued Executive Order N-33-20 ordering California residents to "stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors. . . ." Cal. Exec. Order N-33-20 (March 19, 2020).

Under both the original version of the County's order, as well as a modified version of the order issued May 15, 2020 ("Modified Order") that is at the center of this appeal, "Essential Businesses" that were allowed to continue operating included "Airlines. . . providing transportation services necessary for Essential Activities and other purposes expressly authorized in this Order."  The Modified Order superseded the original order and included expansions of activities that were exempt from the Modified Order.  For example, the definition of "Essential Activities" expanded to include more kinds of "outdoor recreation activity" and by allowing work to be performed for an outdoor business or additional specified businesses, in addition to essential businesses.  The Modified Order cited the "progress achieved in slowing the spread of COVID-19 in the County of Marin . . . and neighboring counties" to explain its expansion of permitted activities.  As attested to by Dr. Willis, the Health Officer of the County, this policy of phased reopening was based off community transmission rates, the capacity of the local health system, the success of COVID-19 testing and tracing, and so on.  This Modified Order led to the enforcement against Seaplane at the center of this appeal.

## B.  Enforcement Against Seaplane Adventures, LLC

Seaplane Adventures, LLC is an air carrier operating in Marin County, California under applicable regulations promulgated by the Federal Aviation Administration ("FAA").  Seaplane provides air tours, charter flights, and flight instruction.  Under operations specifications issued to Seaplane under 14 C.F.R. Part 135, Seaplane is allowed to operate "on-demand operations in common carriage" pursuant to applicable FAA regulations, while under 14 C.F.R. Part 91 certification, Seaplane is allowed to operate passenger flights that took off and landed at the same airport while staying within a 25-mile radius from the takeoff location.

Seaplane at first closed down in early March 2020 at the very beginning of the pandemic, and according to the owner and president of Seaplane, subsequently reopened on or about June 5, 2020 in response to the Modified Order issued on May 15, 2020.  On June 11, 2020, Sergeant Brenton Schneider from the Marin County Sheriff's Office, having "received a multitude of complaints regarding [Seaplane's] business still being open," sent an email to Seaplane informing the company that it needed "to cease any operations related to commercial sight-seeing flights" as Seaplane's operations violated the County's Modified Order.  During communications with Seaplane, Schneider acknowledged that some flights were allowed under the order, such as "for limited, authorized travel purposes (i.e. not sightseeing or leisure travel to Lake Tahoe)," but reiterated the County's position that "[Seaplane's] operations are a clear violation of the current order." Seaplane apparently did not stop operations, as on June 28, 2020, a County staff member received an email complaining of the continued operations of Seaplane and another flight

company, San Francisco Helicopters, in apparent violation of the Modified Order.

According to deposition testimony taken during the course of litigation, on July 3, 2020, the owner and president of Seaplane received a visit from a deputy from the Sheriff's Office. According to the owner, "under threat of extreme economic penalty and further threat that if [Seaplane's operations] continued, [the owner] would be arrested, [Seaplane decided to] shut down." The deputy who had visited Seaplane testified that he had not shut Seaplane down entirely, but rather communicated that the "tour flight operations were not permitted under the health orders," and as the County stated in a letter to John Sharp, Seaplane's counsel, nothing would have prevented Seaplane from operating certain non-recreational flights, a position that Seaplane does not dispute.

## C. Judicial Proceedings

Seaplane filed its complaint on September 2, 2020, about two months after Seaplane was allegedly "shut down." Out of the six claims asserted by Seaplane, the district court dismissed all claims except for (1) the equal protection class of one claim brought under 42 U.S.C. § 1983 and (2) Seaplane's claim that the Airline Deregulation Act of 1978 preempts the County's health orders on charter flights to other locations. Although the district court asked the FAA, who is not a party to this suit, for its views on the preemption issue, the agency declined to submit a brief, citing its belief that the issue was moot because of the recession of the relevant health orders.

The district court issued two orders resulting from the County's motion for summary judgment. The first order granted summary judgment to the County on Seaplane's

equal protection claim and related 42 U.S.C. § 1983 claim. The second order granted limited declaratory relief to Seaplane related to the preemption issue. Seaplane timely appealed the district court's grant of summary judgement, while the County timely cross-appealed the grant of limited declaratory relief related to the preemption issue.

## II.      Standards of Review

We review the district court's decision to grant summary judgement *de novo*. *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 468 (9th Cir. 2023). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is warranted. *Opara v. Yellen*, 57 F.4th 709, 721 (9th Cir. 2023) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"We review evidentiary rulings for abuse of discretion, even when the rulings determine the outcome of a motion for summary judgment." *Clare v. Clare*, 982 F.3d 1199, 1201 (9th Cir. 2020) (citation and internal quotation marks omitted).

## III.     Discussion of Seaplane's Direct Appeal

On its direct appeal, Seaplane contends: (1) there were triable issues of material fact that precluded a grant of summary judgment in favor of the County on its equal protection and related Section 1983 claims; and (2) the district court abused its discretion in its consideration of the testimony of Dr. Willis.  We affirm the district court's grant of summary judgment.

## A.  Equal Protection "Class of One"

Seaplane raises an equal protection "class of one" claim, alleging that the County intentionally treated Seaplane differently from other similarly situated groups. To succeed on a "class of one" equal protection claim, Seaplane must demonstrate the County "(1) intentionally (2) treated [Seaplane] differently than other similarly situated [individuals or groups], (3) without a rational basis." *Gerhart v. Lake Cnty.*, 637 F.3d 1013, 1022 (9th Cir. 2011). Seaplane must show that a rational trier of fact could find for Seaplane on all three prongs of the "class of one" claim to preclude a grant of summary judgment, but because the County's actions have a rational basis, we affirm the district court's grant of summary judgment in favor of the County and hold that it is not necessary to analyze the other prongs.

### 1.  Rational Basis

Seaplane and the County dispute what the appropriate comparison category is for comparing whether the County's actions were rooted in a rational basis.  It is salient for our analysis that health officials traditionally have broad discretion, through legislation and upon review by courts, to take actions to stem the transmission of a contagious disease. *See generally* Cal. Health & Safety §§ 101040, 101085, 120175 (the sections under which the Modified Order was issued); *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905) (holding that the state retained inherent police powers to protect the health of their citizens). Regardless of the relevant comparison category, we hold the County's actions meet the deferential rational basis test.

We have stated that "the rational basis prong of a 'class of one' claim turns on whether there is a rational basis for the *distinction*, rather than the underlying government

*action*." *Gerhart*, 637 F.3d at 1023.  This prong is deferential to the government; a classification comports with the Equal Protection Clause if it is "rationally related to a legitimate state interest." *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (*per curiam*).  As the Supreme Court has stated when reviewing a law regulating businesses under the rational basis test, "the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Williamson v. Lee Optical of Oklahoma Inc.*, 348 U.S. 483, 487–88 (1955).  Here, the evil is clear: a deadly virus that was tearing into the most vulnerable throughout the County, country, and world.  We hold that the actions of the County meet the rational basis standard as it took actions to mitigate the damage of the COVID-19 virus.

When it comes to health and safety measures, the judiciary has long recognized that the "safety and health of [a constituency] are, in the first instance for [a state] to guard and protect," *Jacobson*, 197 U.S. at 38, and that a "state may invest local bodies called into existence for purposes of local administration with authority in some appropriate way to safeguard the public health and the public safety." *Id.* at 25.  When actions are undertaken during a time of great uncertainty with a novel disease, "medical uncertainties afford little basis for judicial responses in absolute terms" and that legislative authority "must be especially broad" in "areas fraught with medical and scientific uncertainties." *Marshall v. United States*, 414 U.S. 417, 427 (1974).  With the benefit of hindsight and knowledge of facts discovered by scientists, doctors, and health officials after the crisis had subsided, we recognize that perhaps state and local

governments could have acted differently, but health officials do not need to act perfectly to establish a rational basis. The passage of time and the resulting receding of a crisis does not make us, as courts, competent to second guess what the best avenue of action was for a state or local government when the crisis was raging, especially in light of the long-established standard for rational basis review. For the purposes of judicial review, the County's modifications to its health order, such as in the changes made between the original March 16 order and the May 15 Modified Order that permitted additional activities, and its stated rationale based on then-existing knowledge of how the novel virus spread and datapoints such as community transmission rates, evidence a rational decision-making process that satisfies rational-basis review.

Seaplane argues that the County did not offer any concrete facts showing the basis for prohibiting recreational aviation. However, Seaplane's general assertions are not enough when available evidence in the record shows that the County did have ample bases for making the distinction. Dr. Willis, the County's health officer, stated in his declaration that the County's COVID-19 response was based on then-existing knowledge of COVID-19's communicability and guidance from the Centers for Disease Control and Prevention. To the extent that the relevant distinction defining the scope of the class is recreational and non-recreational flights, the rational basis is abundantly clear: to lower transmission of COVID-19 by restricting activities not defined as essential. As the Supreme Court stated in other COVID-19 cases, "Stemming the spread of COVID-19 is unquestionably a compelling state interest," *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020), and unlike in those cases, where free exercise claims were

involved that necessitated strict scrutiny analysis, the County's regulation of Seaplane's business activities falls under rational basis review.

To the extent that Seaplane is alleging differential treatment between Seaplane and other air carriers providing recreational flights in violation of the health order, the rational basis for the County's action is also abundantly clear: it simply did not know of the other violators. Seaplane's citations to its own allegations that the County must have known or should have known that other individuals were violating its health order is not sufficient to constitute an equal protection class of one claim, especially when considering the County's reasonable and rational explanation. *See Madden v. Commonwealth of Kentucky*, 309 U.S. 83, 88 (1940) ("The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it."). Seaplane contends that the County had the resources to monitor other airlines; even if we set aside the County's explanation that it operated on a complaint system (a rational way for any governmental entity to act with limited resources during a time of great uncertainty), Seaplane's argument amounts to a complaint that the County did not allocate the resources in the way Seaplane thought it should have done. Recognizing our role as a court, not a legislature, we do not have the expertise nor judicial mandate to wade into the distribution of local resources, especially when it comes to monitoring and enforcement, absent some need to apply heightened scrutiny or other extraordinary circumstances that are not present here. Rational basis review does not require the County to behave optimally, but only rationally.

As we have detailed the ample rational bases upon which the County based its health order and enforcement against

Seaplane, we have no reason to proceed to the other prongs of the analysis. We hold that summary judgment for the County was warranted as a matter of law and affirm the district court.

## B. Seaplane's Objection to the Testimony of Dr. Willis

We review the district court's decision regarding evidentiary matters for abuse of discretion, *see Clare*, 982 F.3d at 1201, and affirm the district court. Seaplane contends that because Dr. Willis, the County's health officer, was not designated as the person most knowledgeable during discovery proceedings, the district court abused its discretion by considering his testimony regardless. Seaplane does not specify why it was unable to depose Dr. Willis other than citing to general financial reasons and its erroneous understanding of a privilege log. The record indicates that they knew of Dr. Willis's importance, as the challenged health orders were signed by Dr. Willis and Seaplane attempted to obtain information related to Dr. Willis during the course of discovery. The district court was correct in its assertion that Seaplane could have deposed Dr. Willis if it so desired, and the district court did not abuse its discretion in its consideration of Dr. Willis's testimony.

## IV. Discussion of the County's Cross-Appeal and the Preemption Order

On its cross-appeal, the County contends the preemption order should be vacated as moot and alternatively, that the applicable federal laws do not preempt the County's health orders related to aviation. We vacate the preemption order as moot and remand with instructions to dismiss the motion for declaratory relief for lack of jurisdiction.

Our judicial power under Article III requires that there be a live case or controversy, and a suit "becomes moot, when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013)) (cleaned up).   Both parties agree that the modified health orders are no longer in effect.  We have previously recognized two exceptions to the mootness doctrine that would allow us to retain jurisdiction over the preemption order: the voluntary cessation exception and the capable of repetition yet evading review exception. *See, e.g., Brach v. Newsom,* 38 F.4th 6, 12 (9th Cir. 2022) (*en banc*).  We hold that neither exception applies and that the district court's preemption order must be vacated.

First, the voluntary cessation exception does not apply. As the Supreme Court has emphasized, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued."  *Already*, 568 U.S. at 91.  However, as we have noted in *Brach*, involving COVID-19 orders that were allowed to expire, this exception does not apply where the defendant has met its burden to show that the "challenged behavior cannot reasonably be expected to recur."  38 F.4th at 12 (quoting *Already*, 568 U.S. at 96).  The County allowed recreational flights to be readded to its list of permissive business operations in August 2020, and as of the issuance of this opinion, both the national and California state of emergencies resulting from the pandemic have been allowed to expire and the Modified Order is no longer in effect.  We have recognized that the government's actions in ending a challenged policy are granted a presumption of good faith, *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014), and with the end of California's state of emergency upon which the health orders were partially based, there is no indication

that the County can or will reimpose restrictions similar to those in effect at the very beginning of the pandemic. As there is no reasonable expectation that the County will reissue an order that would prohibit Seaplane from operating its recreational flights, the voluntary cessation exception does not apply.

Second, the capable of repetition yet evading review exception is also not applicable. This exception arises where "(1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again." *Brach*, 38 F.4th at 15 (citation omitted). Even if we assume without deciding that the first prong is met, Seaplane cannot prove that the challenged health orders will be applied to it again beyond "a mere physical or theoretical possibility." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). That is not enough to trigger the exception.

The controversy that led to the grant of limited declaratory relief is moot, so we vacate the preemption order and remand with instructions to dismiss Seaplane's request for declaratory relief.

## V.    Conclusion

We affirm the district court's grant of summary judgment to the County on Seaplane's equal protection and related Section 1983 claim. We also vacate the preemption order and remand with instructions to dismiss Seaplane's request for declaratory relief as moot.

**AFFIRMED    in    part,    VACATED    and REMANDED in part with instructions to dismiss.**

IKUTA, Circuit Judge, concurring in judgment:

Seaplane Adventures, LLC (Seaplane) claims the County of Marin (the County) ordered it to shut down for violating county health orders while allowing other similarly situated air carriers to continue to operate. Therefore, Seaplane claims that its equal protection rights were violated. Because we can affirm the district court's grant of summary judgment in favor of the County on the simple ground that there is no evidence that the County knew of any similarly situated violators, it is not necessary to decide whether the County's health orders were rational, an issue irrelevant to Seaplane's equal protection claim.

The facts are simple. Beginning in March 2020, the County issued a series of health orders aimed at "slow[ing] the spread of COVID-19." The initial order required many businesses to close, but allowed essential businesses, including transportation services, to remain open subject to certain restrictions. Air carriers were deemed to be essential businesses to the extent they provided transportation services necessary for specified essential activities. In compliance with the initial health order, Seaplane, which operates an air travel business, including seaplane tours and charter flights, ceased operations in mid-March 2020.

In May 2020, the County modified its order to allow some businesses to reopen based on multiple factors, including how "essential the industry at issue was to the health and welfare of the community in general" and the risk of transmitting COVID-19 associated with particular activities. Based on its interpretation of the amended health order, Seaplane resumed its operations in early June 2020. After Seaplane's reopening, the County received reports that Seaplane was operating recreational flights in violation of

the health orders, and ordered Seaplane to "cease any operations related to commercial sight-seeing flights."[1]  In response, Seaplane brought suit against the County, arguing that the County had not ordered similarly situated air carriers flying out of Gnoss Field, an airport owned by the County, to stop operating, which violated Seaplane's equal protection rights.

To succeed on its "class of one" equal protection claim, Seaplane must demonstrate that the County: (1) intentionally (2) treated Seaplane differently than other similarly situated businesses, (3) without a rational basis.  *See Gerhart v. Lake Cnty.*, 637 F.3d 1013, 1022 (9th Cir. 2011).  Seaplane cannot carry this burden because even when viewing the evidence in the light most favorable to Seaplane, it has failed to create a genuine issue of material fact that the County knew that other air carriers were operating flights unconnected to essential activities out of Gnoss Field.

Seaplane primarily relies on two pieces of evidence. First, Seaplane argues that because the County owned the airport at Gnoss Field, it would have necessarily known that other air carriers were conducting recreational flights.  This argument fails.  County officials interpreted the health orders to allow certain types of "essential" flights, but not recreational flights such as commercial sight-seeing flights. Therefore, in order to know whether a specific air carrier was violating the health orders, the County would need to know the purpose of the flights conducted by that air carrier.  But there is no evidence that the County knew the purpose of the

---

[1] The County also received complaints that Skydive Golden Gate and SF Helicopters were violating the health orders, and treated them the same as Seaplane.

other air carriers' flights. The manager of Gnoss Field stated in his declaration that he "never received any report, nor did [he] ever otherwise learn, that any business or individual operating at the Airport was acting in violation of any of the terms of the health orders issued by County." There is no evidence to the contrary.

Second, Seaplane points to the declaration of Patrick Scanlon, the owner of Scanlon Aviation, a commercial air carrier using Gnoss Field.[2] According to Scanlon's declaration:

> Scanlon Aviation operated/operates for all purposes it was/is permitted to under [federal regulations]. This includes, but is not limited to, booking and flying charter flights throughout the state and flight instruction for recreational purposes or otherwise. Scanlon Aviation did not limit these flights to any particular category or group of passengers and/or activity; and did not limit these flights to 'essential workers, or 'essential activities, as those terms are defined under the Health Orders.

The declaration then states that "[t]he County was aware that Scanlon [Aviation] was operating during the time the

---

[2] Seaplane also relies on a declaration from Andrew Wait, a lessee of a hangar at Gnoss Field, stating that "[t]o [his] knowledge, the County was aware that the Gnoss-Field airlines were continuing operations out of Gnoss Field, despite the Health Orders as the County owns Gnoss Field." Because Wait's declaration does not indicate that the County knew the purpose of these flights, the declaration does not create a genuine issue of material fact regarding the County's intent.

Health Orders were in effect" because Scanlon "sent the County a copy of Scanlon Aviation's COVID-19 Mitigation Plan ('Site Specific Protection Plan' or 'SPP') via email on May 4, 2020."

Taking these statements in the light most favorable to Seaplane, they raise the inference that Scanlon Aviation flew recreational flights at a time when the County prohibited such flights. Even so, these statements do not raise an inference that the County *knew* that Scanlon Aviation was doing so, because the declaration indicates only that the County knew that Scanlon Aviation was providing flights of some kind. Likewise, Scanlon Aviation's Site Specific Protection Plan does not help Seaplane because nothing in the plan discusses commercial sight-seeing operations or otherwise raises the inference that the County knew that Scanlon Aviation was not following its health orders.

In the absence of any evidence that the County knew that other similarly situated air carriers were violating the health orders and failed to stop them, Seaplane cannot raise any genuine dispute that the County intentionally treated other violators differently without a rational basis. Therefore, Seaplane's equal protection claim fails. *See Gerhart*, 637 F.3d at 1022. We need not go any further.

Because we can readily decide this case on this ground, there is no need to address whether any differential treatment that Seaplane experienced would have been rational. And there is no need to address whether the County's health orders themselves were rational, because this issue is not relevant to Seaplane's "class of one" equal protection claim. Finally, there is no reason for the majority to address the degree of deference we owe to a local government's issuance

of health orders because that question is not before us. Accordingly, I concur only in the judgment.