**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| RANDON L. MILLER, | No. 22-16004 |
| *Plaintiff-Appellant*, | D.C. No. 2:21-cv-00834-GMS-MTM |
| v. | |
| CITY OF SCOTTSDALE, a municipal entity; CHRISTIAN BAILEY, in his official and individual capacities, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the District of Arizona
G. Murray Snow, Chief District Judge, Presiding

Argued and Submitted September 12, 2023
Phoenix, Arizona

Filed December 8, 2023

Before: Ronald M. Gould, Andrew D. Hurwitz, and
Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Gould;
Concurrence by Judge Hurwitz;
Dissent by Judge Bumatay

# SUMMARY[*]

## COVID-19 Executive Order Enforcement

The panel affirmed the district court's summary judgment in favor of Scottsdale Police Officer Christian Bailey and the City of Scottsdale in a 42 U.S.C. § 1983 action alleging constitutional violations arising from plaintiff's arrest and citation for violating a COVID-19 emergency executive order, which prohibited restaurants from offering on-site dining.

Arizona Governor Ducey issued four COVID-19 executive orders between March 19, 2020, and June 29, 2020, that among other things prohibited on-site dining (EO-2020-09), included restaurants on a list of essential functions that could remain open during the pandemic (EO 2020-12), and required that notice and an opportunity to comply be given prior to any enforcement action (EO 2020-18). Plaintiff is the owner of Sushi Brokers, LLC, which operates a sushi restaurant in Scottsdale, Arizona. On April 11, 2020, officers cited and arrested plaintiff for violating Arizona Revised Statute ("A.R.S.") § 26-317, which makes it a misdemeanor to violate emergency executive orders. The charges were later dismissed. Plaintiff brought suit alleging, among other things, retaliatory arrest, in violation of the First Amendment, and false arrest, in violation of the Fourth Amendment.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel first noted that both retaliatory and false arrest claims require showing the absence of probable cause. Here, given that officers had observed on-site dining at the restaurant and there were prior calls reporting violations, Officer Bailey had probable cause to arrest plaintiff under A.R.S. § 26-317 for violating an emergency order.

The panel next rejected plaintiff's argument that that the warnings he received on March 27 and 28, 2020, did not qualify under EO 2020-18's notice requirement because they occurred prior to EO 2020-18's enactment. Holding that there was no constitutional violation, the panel noted that plaintiff was arrested for the exact same behavior for which he had received previous warnings. He had sufficient notice and opportunity to comply given the challenges presented by the COVID-19 pandemic.

Concurring, Judge Hurwitz agreed that a reasonable officer with the knowledge that Officer Bailey possessed would believe that plaintiff had violated EO 2020-09 and therefore there was probable cause for the arrest. It did not matter that plaintiff owned the restaurant through a limited liability corporation if he was serving in-person diners. Moreover, even accepting plaintiff's argument that EO 2020-18 superseded all previous orders and required prior notice before any A.R.S. § 26-317 arrest or citation, the result would not change. EO 2020-18 did not invalidate the two prior warnings plaintiff received prior to his arrest that he was violating the ban on in-person dining.

Dissenting, Judge Bumatay would remand to the district court to determine in the first instance what law governed at the time of plaintiff's arrest. If EO 2020-09 and EO 2020-12 governed, then plaintiff did not violate the law because those orders applied only to "restaurants" or "businesses"—

not persons. Nevertheless, Officer Bailey's legal mistake about whether those orders applied to individuals was reasonable. If EO 2020-18 was the governing law, then it didn't apply to plaintiff because he wasn't afforded the required notice. The March 27 and 28 warnings were insufficient because they were made before EO 2020-18 went into effect. If Officer Bailey was required to rely on 2020-18, his mistake in believing plaintiff could be arrested was not reasonable.

## COUNSEL

Cameron A. Morgan (argued), Cameron Morgan Law, Scottsdale, Arizona, for Plaintiff-Appellant.

Kathleen L. Wieneke (argued) and Laura A. Van Buren, Wieneke Law Group, Tempe, Arizona, for Defendant-Appellee.

**OPINION**

GOULD, Circuit Judge:

Before us is another case arising out of the early days of the COVID-19 pandemic.  In *Seaplane Adventures, LLC v. Cnty. of Marin*, we recognized the COVID-19 pandemic was "a threat unlike any in recent times," and that "health officials traditionally have broad discretion, through legislation and upon review by courts, to take actions to stem the transmission of a contagious disease."  71 F.4th 724, 726, 730 (9th Cir. 2023).  At issue here is the enforcement of a governor's emergency executive order enacted under the guidance of health officials.  The district court granted summary judgment to Scottsdale Police Officer Christian Bailey and the City of Scottsdale in this 42 U.S.C. § 1983 action, and we affirm.

## I. Background

### A. Arizona's COVID-19 Executive Orders

On March 11, 2020, Arizona Governor Douglas A. Ducey issued a Declaration of Emergency for the COVID-19 pandemic, citing findings by the World Health Organization, the United States Department of Health and Human Services, and the Arizona Department of Health Services.  The declaration authorized the "Director of the Arizona Department of Health Services to coordinate all matters pertaining to the public health emergency response of the State."  Governor Ducey subsequently issued four executive orders relevant to this action.

Issued on March 19, 2020, Executive Order ("EO") 2020-09 prohibited restaurants from offering on-site dining:

>Beginning at close of business on Friday, March 20, 2020, all restaurants in counties of the State with confirmed cases of COVID-19 shall close access to on-site dining until further notice.  Restaurants may continue serving the public through pick up, delivery, and drive-thru operations.

Issued on March 23, 2020, EO 2020-12 included restaurants on a list of "essential functions" that could remain open during the pandemic.  EO 2020-12 did not supersede EO 2020-09's prohibition against on-site dining:

>**Restaurants for consumption off-premises:** Restaurants and other facilities that prepare and serve food, but only for consumption off-premises, through such means as in-house delivery, third-party delivery, drive-through curbside pick-up and carryout. . . . This order is consistent with and does not supersede Executive Order 2020-09.

Issued on March 30, 2020, EO 2020-18 set forth a physical distancing policy and enacted a notice requirement: "Prior to any enforcement action being taken to enforce this order in accordance with A.R.S. § 26-317, a person shall be notified and given an opportunity to comply."

Issued on June 29, 2020, EO 2020-43 specified that enforcement actions could be taken against business entities:

> Notwithstanding any other law or executive order, this executive order allows law enforcement and any regulatory agency, pursuant to their regulatory authority, to take immediate enforcement action against any business that fails to follow this Executive Order or any guidance issued by the Arizona Department of Health Services relating to COVID-19 for the protection of the public health, safety and welfare . . . .

On January 27, 2022, the Maricopa County Superior Court held in an unrelated case that "[b]ecause E.O. 2020-43 was directed only at establishments, and not the owners or managers of establishments, [individuals] cannot be held personally liable under A.R.S. § 26-317 for violating E.O. 2020-43." *Arizona v. Mahaffey*, LC2021-000194-001, at *7 (Maricopa Cnty. Super. Ct., Jan. 27, 2022).

## B. Randon Miller's Arrest

Randon L. Miller is the owner of Sushi Brokers, LLC, which operates a sushi restaurant in Scottsdale, Arizona. Scottsdale police officers visited Miller on March 27 and 28, 2020 in response to complaints that Sushi Brokers was violating EO 2020-09's prohibition against on-site dining. On April 10, 2020, Scottsdale police received a tip from a caller who reported seeing at least fifteen people dining inside Sushi Brokers. An officer went to Sushi Brokers that evening and saw about ten people inside the establishment, of whom four left without to-go food bags. The officer also reported observing: (1) one man (likely Miller) walking

inside with a glass of beer; (2) a woman eating inside with chopsticks; and (3) two men drinking alcoholic beverages outside who later went back inside.

The next day, April 11, 2020, appellee Officer Christian Bailey and six other officers visited Sushi Brokers to serve Miller with a citation for violating Arizona Revised Statutes ("A.R.S.") § 26-317, which makes it a class 1 misdemeanor to violate emergency executive orders. Miller shouted obscenities at Officer Bailey, who eventually managed to serve the citation. When Officer Bailey began to leave, Miller shouted at the officers. This led Officer Bailey to arrest Miller for violation of a COVID-19 executive order under A.R.S. § 26-317 and disorderly conduct under A.R.S. § 13-2904(A)(1). These charges were later dismissed.

## C. Judicial Proceedings

Miller brought the present Section 1983 action asserting, as relevant here, claims of (1) retaliatory arrest, in violation of the First Amendment; (2) false arrest, in violation of the Fourth Amendment; and (3) liability against the City of Scottsdale under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *Miller v. City of Scottsdale*, No. 2:21-cv-00834-GMS-MTM, at *3 (June 10, 2022), Dkt. 65. The district court granted defendants' motion for summary judgment, holding that (1) Officer Bailey had probable cause to arrest Miller for violation of an executive order; and (2) Miller "plead[ed] no facts and provide[d] no evidence to support his *Monell* claim." *Id.* at *11–13; This timely appeal followed.

## II. Standard of Review

We have jurisdiction under 28 U.S.C. § 1291, and "review *de novo* the grant of summary judgment." *Johnson*

*v. Barr*, 79 F.4th 996, 999 (9th Cir. 2023).  "Viewing the evidence and drawing all inferences in the light most favorable to the non-moving party, we must determine whether any genuine issues of material fact remain and whether the district court correctly applied the relevant substantive law." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 967 (9th Cir. 2021) (citation omitted).

### III. Probable Cause

To prevail on any of his claims, Miller must demonstrate that Officer Bailey lacked probable cause to arrest him.  Both retaliatory and false arrest claims require showing the absence of probable cause.[1]  *Nieves*, 139 S. Ct. at 1724 (A "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest."); *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (requiring probable cause to establish a valid arrest).  Similarly, without showing an absence of probable cause, Miller cannot establish a constitutional violation necessary to prevail on

---

[1] Miller relies on a narrow exception in *Nieves v. Bartlett* to argue that he does not have to prove the absence of probable cause for his retaliatory arrest claim.  139 S. Ct. 1715 (2019).  In *Nieves*, the Supreme Court held that a plaintiff does not have to prove the absence of probable cause in "circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so."  *Id.* at 1727.  To invoke this exception, the Court held a plaintiff must present "objective evidence" that he was "arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."  *Id.*  Miller provides no objective evidence to support his claim that individuals are rarely arrested after being released following a citation.  *Ballentine v. Tucker*, 28 F.4th 54, 62 (9th Cir. 2022) (stating that, at minimum, the "objective evidence" must consist of local records comparing the number of arrests to non-arrests for similar conduct or citations made under a given statute).

his municipal liability claim under *Monell*. *Sinclair v. City of Seattle*, 61 F.4th 674, 680 n.3 (9th Cir. 2023).**[2]**

In the context of a Section 1983 action, "[p]robable cause to arrest exists when there is a 'fair probability or substantial chance of criminal activity' by the arrestee based on the totality of the circumstances known to the officers at the time of arrest." *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1164 (9th Cir. 2022) (quoting *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012) (en banc)). This "is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Kaley v. United States*, 571 U.S. 320, 338 (2014) (cleaned up). For probable cause, officers may rely on information gained by other officers under the "collective knowledge" doctrine. *United States v. Ramirez*, 473 F.3d 1026, 1036–37 (9th Cir. 2007).

Miller's arrest report states that he was arrested for violating a COVID-19 executive order on April 10, 2020. It is undisputed that, before arresting Miller on April 11, 2020, Officer Bailey was advised that police officers had visited the restaurant on March 27 and 28, 2020 for possible violations of EO 2020-09's prohibition against on-site dining, and that additional violations were observed on April 10, 2020. Miller also does not challenge the observations of

---

[2] Because we conclude that Officer Bailey had probable cause to arrest Miller under A.R.S. § 26-317, we do not address whether the defendants properly raised a qualified immunity defense in the district court or whether Miller waived his arguments that there was no probable cause. And because probable cause need only exist for one, rather than all, of the offenses charged, we do not address whether there was probable cause to arrest Miller for disorderly conduct. *Blankenhorn v. City of Orange*, 485 F.3d 463, 473 (9th Cir. 2007).

the officer who visited Sushi Brokers on the evening of April 10, 2020.

Even taking as true Miller's argument that some of the people in the restaurant on April 10 were employees and not patrons, no reasonable jury could conclude that Officer Bailey lacked probable cause. Miller's argument does not account for the prior calls reporting violations or the officer's observations of four individuals leaving the restaurant without to-go bags. *Hart v. Parks*, 450 F.3d 1059, 1066 (9th Cir. 2006) (stating that anonymous tips implicating defendant were "valuable"). The probable cause inquiry turns not on whether there was a violation in fact, but on whether a reasonable officer would conclude that there was a fair probability of a violation. *See id.* at 1066–67 (noting that for probable cause, the detectives did not need personal knowledge that the items "were *actually* stolen"); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1147 (9th Cir. 2012) (stating that once probable cause is established, officers do not have a duty to investigate further for exculpatory evidence). The record demonstrates that Officer Bailey undoubtedly had probable cause to arrest Miller under A.R.S. § 26-317.[3]

## IV. Executive Order 2020-18's Notice Requirement

Miller contends that he was not given notice and an opportunity to comply as required under EO 2020-18. Miller states that the officer visits and warnings on March 27 and

---

[3] Any requirement in EO 2020-43 that enforcement for violations of the COVID-19 executive orders must be taken against businesses rather than individuals is irrelevant because EO 2020-43 was enacted on June 29, 2020, *after* Miller's arrest. *Vanegas*, 46 F.4th at 1164 (probable cause is determined "based on the totality of the circumstances known to the officers *at the time of arrest*") (emphasis added).

28, 2020 do not qualify because they both occurred before EO 2020-18's enactment on March 30, 2020.  Section 1983 actions generally cannot rest on a violation of state law, "unless the right encompassed in the state statute is guaranteed under the United States Constitution."[4]  *Moore v. Marketplace Rest., Inc.*, 754 F.2d 1336, 1349 (7th Cir. 1985); *accord Smith v. City & Cnty. of Honolulu*, 887 F.3d 944, 952 (9th Cir. 2018).  But we address Miller's contention because we construe it as a claim under the Fourteenth Amendment Due Process Clause.  *Smith*, 887 F.3d at 952 ("[S]tate laws can create liberty interests that are subject to protection under the Fourteenth Amendment.").  EO 2020-18's notice requirement created an interest in freedom from citation or arrest without prior warning.  *See, e.g.*, *Carlo v. City of Chino*, 105 F.3d 493, 498–99 (9th Cir. 1997) (holding that a California statute created a liberty interest in an arrestee's right to make phone calls).

To determine whether Miller was afforded sufficient procedural protections, we look at "(1) the private interest affected; (2) the risk of an erroneous deprivation and the probable value of any additional or substitute procedural safeguards; and (3) the government's interest."  *Johnson v. Ryan*, 55 F.4th 1167, 1179–80 (9th Cir. 2022) (citing

---

[4] For this reason, we reject Miller's contentions based on Arizona state law.  It is long settled that the requirement under A.R.S. § 13-3883 that a misdemeanor be committed in an officer's presence is not grounded in the Fourth Amendment.  *Vanegas*, 46 F.4th at 1165.  Although at oral argument Miller's counsel cited *Rodriguez v. United States*, 575 U.S. 348 (2015), we generally do not consider an argument not included in the appellant's opening brief.  *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).  Moreover, *Rodriguez* is inapposite because it involves an officer's authority to extend a traffic stop to conduct tasks beyond those "tied to the traffic infraction."  575 U.S. at 354.  Here, Miller was arrested for the same violation for which he was cited.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  Miller contends that to comply with due process, Scottsdale police should have issued notice of his violation of EO 2020-09 following EO 2020-18's enactment, despite having already issued two prior warnings.  We conclude there is nearly no risk of erroneous deprivation or value of additional notice in these circumstances.  Miller was arrested for the exact same behavior for which he had received previous warnings, and all three instances involved enforcement of A.R.S. § 26-317, the generic enforcement provision for executive orders enacted during an emergency.[5]

The government's interest is also significant.  We reiterate as a general rule of law that "in the midst of a dangerous health emergency," we must "ensure the proper deference is given to local governmental officials." *Seaplane Adventures, LLC*, 71 F.4th at 726.  Law enforcement officials enforcing laws enacted under the guidance of public health officials are no exception.  The Supreme Court recognized in *Jacobson v. Massachusetts* that "[t]he authority to determine for all what ought to be done in such an emergency" can be appropriately granted "in the first instance, to a board of health composed of persons residing in the locality affected, and appointed, presumably, because of their fitness to determine such questions."  197 U.S. 11, 27 (1905).  During pandemics like COVID-19, the legislative and executive branches have broad powers and discretion to carry out the recommendations of health

---

[5] The Declaration of Emergency for COVID-19 stated it was authorized "pursuant to A.R.S. § 26-303(D) and in accordance with A.R.S. § 26-301(15)."  A.R.S. § 26-317 states, "Any person who violates any provision of this chapter or who knowingly fails or refuses to obey any lawful order or regulation issued as provided in this chapter shall be guilty of a class 1 misdemeanor."

officials designed to protect "[t]he safety and the health of the people." *Id.* at 38; *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613–14 (2020) (Robert, C.J., concurring); *see also Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020) (per curiam) ("Members of this Court are not public health experts, and we should respect the judgment of those with special expertise and responsibility in this area."); *Slidewaters LLC v. Wash. State Dep't of Lab. & Indus.*, 4 F.4th 747, 758 (9th Cir. 2021) ("States are given 'great leeway in adopting summary procedures to protect public health and safety.'") (quoting *Mackey v. Montrym*, 443 U.S. 1, 17 (1979)).

Such deference is at its height for measures taken, as here, during the early stages of a pandemic, when local governmental officials have limited knowledge about a novel disease and yet must nonetheless act to prevent the loss of lives. *See Seaplane Adventures, LLC*, 71 F.4th at 730–31 ("The passage of time and the resulting receding of a crisis does not make us, as courts, competent to second guess what the best avenue of action was for a state or local government when the crisis was raging."). Only where a legislative or executive action has "no real or substantial relation" to the public health and safety or is a "plain, palpable invasion of rights secured by the fundamental law," is it "the duty of the courts to so adjudge, and thereby give effect to the Constitution." *Jacobson*, 197 U.S. at 31. We conclude that there was no constitutional violation here, much less a "plain" or "palpable" one. Miller had sufficient notice and opportunity to comply given the challenges presented by the COVID-19 pandemic. *See Clement v. City of Glendale*, 518 F.3d 1090, 1093–94 (9th Cir. 2008) ("The government need not give notice in an emergency, nor if notice would defeat the entire point of the seizure, nor when the interest at stake

is small relative to the burden that giving notice would impose.").

The dissent erroneously concludes it is dispositive that "the district court didn't resolve whether 2020-09 and 2020-12 stood on their own at the time of Miller's arrest, or whether 2020-18 applied." EO 2020-18 states that it "builds on actions the state has already taken, and further memorializes some already in effect," and refers to EO 2020-09 and 2020-12 in its preamble. Officer Bailey could have relied on any of the three executive orders in arresting Miller. Arresting Miller without additional notice following the enactment of EO 2020-18 also does not implicate the Ex Post Facto Clause. The dissent omits in its quotation of *McGill v. Shinn* that the Ex Post Facto Clause "prohibits a state from retroactively *changing the definition of a crime to* make formerly innocent behavior illegal *or increasing the punishment for criminal acts*." 16 F.4th 666, 700–01 (9th Cir. 2021) (emphasis added). EO 2020-18 did not change the definition of nor increase the punishment for the crime for which Miller was arrested: violating a prohibition against on-site dining.

## V. Conclusion

For the foregoing reasons, we affirm the district court's grant of summary judgment to the defendants on Miller's Section 1983 claims against Officer Bailey and the City of Scottsdale.

**AFFIRMED.**

HURWITZ, Circuit Judge, concurring:

The issue in this 42 U.S.C. § 1983 case is whether Scottsdale Police Officer Christian Bailey had probable cause to arrest Randon Miller on April 11, 2020, for violating Ariz. Rev. Stat. ("A.R.S.") § 26-317, which makes it a class 1 misdemeanor to "knowingly fail[] or refuse[] to obey any lawful order or regulation issued as provided in this chapter." The parties do not dispute that Arizona Governor Douglas Ducey's Executive Order ("EO") 2020-09, which prohibited "on-site dining" in restaurants at the outset of the COVID-19 pandemic, was a lawful order "issued as provided in this chapter."

As Judge Gould's opinion makes clear, Officer Bailey had ample cause to believe that on April 11, Miller was serving meals in the restaurant he owned and operated, Sushi Brokers. Officer Bailey also knew that other Scottsdale police officers had visited the restaurant on March 27 and 28, and those officers had notified Miller that he was violating EO 2020-09er. Thus, the question in this case is whether Officer Bailey had probable cause to believe that this set of facts established a violation of A.R.S. § 26-317.

Miller argues that Officer Bailey lacked probable cause for two reasons. First, he contends that EO 2020-09 only applied to businesses, not individuals. Second, citing another gubernatorial order, EO 2020-18, issued on March 30, 2020, which required that "[p]rior to any enforcement action being taken to enforce this order in accordance with A.R.S. § 26-317, a person shall be notified and given an opportunity to comply," Miller claims that he did not violate § 26-371 because he did not receive notice and an opportunity to comply before the arrest. Miller argues that the earlier warnings do not count because they came before

EO 2020-18 was issued. Judge Gould's opinion quite correctly rejects both arguments.

The starting point, as Judge Gould correctly notes, is recognizing that establishing probable cause is "not a high bar." Op. at 10. We need not decide today whether Miller's legal arguments might have prevailed had he gone to trial for violating the executive order. We do not require arresting officers to parse the law with the fine-tooth comb that appellate counsel can wield. Rather, the question is whether a reasonable officer with the knowledge that Officer Bailey possessed would believe that Miller had violated EO 2020-09. *See United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) ("Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested.").

I agree with Judge Gould that this undemanding standard was met. As Miller argues, EO 2020-09 only stated that "restaurants" could not allow in-person dining; it made no specific mention of the individuals operating the restaurants. But A.R.S. § 26-317 applies to "[a]ny person" who violates an emergency executive order. It should not matter that Miller owned the restaurant through a limited liability corporation if he was serving in-person diners. An individual operating a restaurant is not exempted from EO 2020-09 order simply because formal ownership of the restaurant is in a corporation he alone controls. Indeed, even had Officer Bailey been aware that Miller owns Sushi Brokers through an LLC (something the record does not indicate Bailey knew), the officer could surely have reasonably believed that Miller, the sole shareholder in the

corporation and the operator of the restaurant, was violating the order against on-site dining.

Miller's other argument fares no better. As an initial matter, it is not at all clear that the prior notice requirement in EO 2020-18 applies to this case. EO 2020-18 did not purport to supersede or replace any prior COVID-19 executive order. Indeed, its predominant distinguishing feature from the prior executive orders directed at public institutions and businesses was a requirement that individual Arizona citizens "stay at home." EO 2020-18's notice requirement thus seems best read as applying enforcement of that "stay at home" order against individuals, rather than requiring additional notice to business operators, who already had been told of the requirement to cease in-person dining in prior orders.

But even if we were to accept Miller's argument that EO 2020-18 superseded all previous orders and required prior notice before any A.R.S. § 26-317 arrest or citation, the result would not change. Miller had two warnings prior to April 11 that he was violating the ban on in-person dining. Even if EO 2020-18 somehow established an entirely new offense, the executive order did not invalidate any prior warnings. Nor is there an obvious reason to view the warnings as elements of this supposed new offense; they are at most just procedural steps required prior to enforcement.

And, even if all of Miller's complicated legal arguments are accepted, surely Officer Bailey cannot be faulted for not having concluded he could arrest Miller. The officer's belief that there was probable cause to cite and arrest Miller for violation of EO 2020-09 was at the very least reasonable, *see Lopez*, 482 F.3d at 1072, and that is all the law requires.

BUMATAY, Circuit Judge, dissenting:

It is undoubtably true, as my colleagues take pains to point out, that the COVID-19 pandemic was a danger to public health and safety. When faced with threats to the public wellbeing, States may rightfully respond to the emergency. Even so, the Constitution does not simply lay dormant during those times. "The rights enshrined by the Constitution persist in times of crisis and tranquility." *Tandon v. Newsom*, 992 F.3d 916, 930 (9th Cir. 2021) (Bumatay, J., concurring in part and dissenting in part). Simply put, an emergency does not authorize government officials to abandon the protections of the Constitution.

This case tests these concepts in the context of the Fourth Amendment. Over three weeks in March 2020, the Governor of Arizona issued three COVID-19-related emergency orders. First, on March 19, Executive Order 2020-09 prohibited "restaurants" from offering on-site dining. Office of Governor Douglas A. Ducey, Executive Order 2020-09 § 2 (Mar. 19, 2020). Second, on March 23, Executive Order 2020-12 classified "restaurants for consumption off-premises" as essential businesses. Office of Governor Douglas A. Ducey, Executive Order 2020-12 § 3(e)(xiii) (Mar. 23, 2020). Finally, on March 30, Executive Order 2020-18 ordered residents to stay at home unless for an authorized purpose. Office of Governor Douglas A. Ducey, Executive Order 2020-18 (Mar. 30, 2020). Importantly, this order required that "a person shall be notified and given an opportunity to comply" before "any enforcement action" may take place. *Id*. § 14.

Given the dizzying speed of all these orders, confusion was bound to happen.

## I.

### A.

On April 11, 2020, Scottsdale Police Officer Bailey arrested Randon Miller, a restaurant owner, for violating the COVID-19 mandates. *See* Ariz. Rev. Stat. § 26-317 (prohibiting "knowingly fail[ing] or refus[ing] to obey any lawful [emergency] order"). But it's unclear what order governed at the time of Miller's arrest. The City of Scottsdale asserts that 2020-09 and 2020-12 alone justified the arrest. Miller contends that the newest order, 2020-18, was the applicable one. To add confusion to the matter, the district court seemingly conflated 2020-09 and 2020-18. It held that Miller was arrested under 2020-09, but erroneously thought 2020-18's notice-and-opportunity-to-comply requirement fell under that order. For its part, the majority simply says that Officer Bailey could have picked whatever Executive Order he wanted to enforce.

And nobody has a cogent explanation for why their position on which order or orders apply is the right one. On this basis alone, I would remand to the district court to determine in the first instance what law governed at the time of Miller's arrest.

### B.

No matter the order, however, Officer Bailey had no legal basis to arrest Miller under § 26-317.

If 2020-09 and 2020-12 governed, then Miller did not violate the law because those orders applied only to "restaurants" or "businesses"—not persons. The City of Scottsdale conceded as much at oral argument.

But, if 2020-18 was the governing law, then it didn't apply to Miller because he wasn't afforded the required notice.  Recall that 2020-18 directs that notice and an opportunity to comply be given before enforcement.  *See* 2020-18 § 14.  No such notice and opportunity were given.  While Miller received warnings on March 27 and 28, those warnings came before 2020-18 went into effect.  Indeed, the order required notice and opportunity to comply with "this order"—meaning that only warnings made after 2020-18's March 31 effective date count.  *See* 2020-18 § 14.

So, in either case, Miller should not have been arrested.

## II.

But these legal errors don't end the inquiry.  That's because "the Fourth Amendment protects officers who make *reasonable* mistakes about whether the law supports an arrest." *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1169–70 (9th Cir. 2022) (Bumatay, J., concurring) (emphasis added) (citing *Heien v. North Carolina*, 574 U.S. 54, 66 (2014)).  So not all mistakes of law are treated the same.  If Officer Bailey made a reasonable mistake of law, then the City of Scottsdale and Officer Bailey are entitled to dismissal of Miller's § 1983 charges.  If not, this case should proceed.

What law governed at the time of Miller's arrest makes all the difference here.

## A.

Assuming only 2020-09 and 2020-12 governed, like my colleagues, I would hold that Officer Bailey's legal mistake about whether those orders applied to individuals was reasonable.  Officer Bailey was dealing with a novel set of orders, which had not yet been interpreted by any court.  *See*

*Heien*, 574 U.S. at 68 (concluding that a mistake of law was reasonable when an ambiguous law "had never been previously construed by [the State's] appellate courts"). And holding restaurant owners or operators criminally liable for what happens within their restaurants seems legally feasible under Arizona law. *See* Ariz. Rev. Stat. § 13-306 ("A person is criminally liable for conduct constituting an offense which such person performs or causes to be performed in the name of or in behalf of an enterprise to the same extent as if such conduct were performed in such person's own name or behalf."). *But see State v. Angelo*, 800 P.2d 11, 15 (Ariz. Ct. App. 1990) (concluding that corporate officers could not be prosecuted under a tax statute imposing obligations on a corporation).

So I can't say that Officer Bailey acted objectively unreasonably in believing that Miller could be arrested under 2020-09 and 2020-12.

## B.

On the other hand, if Officer Bailey was required to rely on 2020-18, his mistake was not reasonable.

First, it would violate 2020-18's unambiguous text. The order requires that, "[p]rior to any enforcement action being taken to enforce this order," a person "be notified and given an opportunity to comply."  2020-18 § 14.  That means Miller must have received notice under "this order"— meaning under 2020-18 alone.  It's uncontested that Miller never received such notice.  The March 27 and 28 warnings couldn't satisfy notice because they were made before the order went into effect.  Thus, the failure to follow this straightforward textual requirement makes it not "a really difficult or very hard question of statutory interpretation," to

which we should grant officers some leeway.  *See Heien*, 574 U.S. at 70 (Kagan, J., concurring) (simplified).

Second, beyond the text, applying 2020-18 here would unreasonably implicate the prohibition on ex post facto laws. It is a fundamental tenet of criminal punishment that "[n]o State shall . . . pass any . . . ex post facto Law."  U.S. Const. art. I, § 10.    Under that Clause, States may not "retroactively . . . make formerly innocent behavior illegal." *See McGill v. Shinn*, 16 F.4th 666, 700–01 (9th Cir. 2021). Finding probable cause for Miller's arrest here would raise ex post facto concerns.

Executive Order 2020-18 increased the burden on the government to prosecute individuals who violate the COVID-19 mandates.  It changed the law to require the government to prove that a person violated the prohibition on on-site dining at restaurants *after being warned and given an opportunity to comply*.  By the time of his arrest on April 11, Miller never received any warnings to comply with 2020-18.  The only warnings he received came before 2020-18's effective date.  So, to arrest him under 2020-18 would affect Miller's "substantial rights" and "disadvantage" Miller by relieving the government of its higher burden and require applying the law "to actions that pre-date its enactment."    *Id*. at 701 (defining ex post facto laws). Reading the law to apply retroactively is a mistake orders of magnitude greater than simply misreading a confusing statute.  *Cf. Heien*, 574 U.S. at 68.

Applying 2020-18 to the facts here would both do potential harm to a foundational constitutional protection and disregard the unambiguous text of the order.  So, if 2020-18 applied, Officer Bailey's legal error was not objectively reasonable under these facts.

**III.**

Because the district court didn't resolve whether 2020-09 and 2020-12 stood on their own at the time of Miller's arrest, or whether 2020-18 applied, I would vacate the grant of summary judgment and remand for reconsideration.

I thus respectfully dissent.